Argued 30 January, decided 27 February, 1906.

## WOOLLEY v. PLAINDEALER PUBLISHING CO.

84 Pac. 473.

**LIBEL—NATURE OF PUBLICATION IMPUTING A CRIME.**

1. Printed statements maliciously imputing to another the commission of a crime are libelous per se.

**LIBEL—CONSTRUCTION OF PUBLICATION.**

2. A publication stating that plaintiff let contracts for school buildings, supplied the hardware, paints, etc., compelling the contractor to submit to high prices for inferior goods, or to have trouble in having his work accepted, and that at plaintiff's dictation an expensive and out of date heating apparatus was installed, and that he sold an undesirable engine at a large profit to the district, plaintiff being a director of such school district, is libelous per se in Oregon where the statute forbids any school director from having any pecuniary interest directly or indirectly in the construction or furnishing of schoolhouses in his district, under a prescribed penalty.

**PLEADING—WAIVING INSUFFICIENCY OF COMPLAINT.**

3. By the express provision of Section 72, B. & C. Comp., the objection that the facts stated in a complaint do not constitute a cause of action is not waived by failing to demur or answer.

**LIBEL—ALLEGATIONS SHOWING APPLICATION OF LIBELOUS MATTER.**

4. In an action for libel, it being unnecessary under Section 91, B. & C. Comp., to plead any matter showing the application to plaintiff of the defamatory mat-

ter set forth, a complaint showing the publication by defendant of matter that is partly libelous per se is good, though the application of other parts of such matter is not apparent and is not explained by innuendo.

INSTRUCTION AS TO LIBELOUS NATURE OF MATTER PUBLISHED.
5. It is the duty of a trial judge to charge the jury whether a publication is per se libelous or not.

FORBIDDEN PURCHASES BY SCHOOL DIRECTORS — LIBEL — EVIDENCE IN MITIGATION OF DAMAGES.
6. Under Section 3389, B. & C. Comp., concerning purchases of supplies for school districts by school directors, no sale of anything in which a director may have a pecuniary interest should be countenanced; and, therefore, in a libel action for charging a school director with a violation of his duty by selling to his district articles used in daily routine, though not properly for use "in the erection, or for the warming, ventilating, furnishing or repairing" of schoolhouses, defendant should be permitted to show in mitigation of damages any purchases in which plaintiff was pecuniarily interested made by the school board while he was a director.

From Douglas: JAMES W. HAMILTON, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by F. W. Woolley against the Plaindealer Publishing Co., a corporation, and W. C. Conner, to recover damages for the publication in a newspaper of an alleged libel. The complaint, omitting the formal parts and the name of a party defendant as to whom the cause was dismissed, is as follows:

"That during all the times hereinafter mentioned, the plaintiff was, and still is, a member of the board of directors of school district No. 4, in Douglas County, Oregon. That the defendant the Plaindealer Publishing Co. is a corporation duly organized and existing under and by virtue of the laws of the State of Oregon. That the defendant, W. C. Conner is the editor * * of the said defendant corporation, the Plaindealer Publishing Co., and as such has charge of the editing, publishing and printing of the Twice-a-Week Roseburg Plaindealer, a newspaper of general circulation in said school district No. 4, and in Douglas County, Oregon, of which said newspaper the defendant corporation is the proprietor. That on the 2d day of January, 1905, the said defendants, at Roseburg, Oregon, published the said newspaper and therein the following words, all concerning the plaintiff, to wit:

" 'MORE ABOUT THE SCHOOL TAX LEVY.

Editor Plaindealer: F. W. Woolley, the big "IT," the presumptuous great "I AM," of the school board, who has controlled its actions with the pompous air of a Russian autocrat, says that the school board does not vote the tax. Three out of four is a majority which has a lead pipe cinch on the 12 mills forced on the people. We felt sure when this matter was taken up that the grafter would howl, at least when attention was called to wantoned waste and extravagance. Almost every statement made by this self-constituted mouthpiece of the school board is misleading.

" 'The county school fund amounts to about $6 per capita. for each pupil while the State fund amounts to nearly $2 additional. On top of this Woolley has forced through a 12 mill tax. But how has he incurred the indebtedness for which this exorbitant tax is required? By installing a fire trap in the fine building we had before he thus despoiled it; by contracting with outside parties who would stand in to the exclusion of home workmen who were too honest and honorable to be worked. The contract price for the high school building was $20,000, yet he audited and allowed $4,000 extra, 20 per cent of the entire contract. price. Who got this big $4,000 graft? Who is this high mogul who essays to run the town and dictate what meat and drink a man shall take—whose gall is only exceeded by his great grafting propensities. It is Woolley who lets contracts for school buildings, supplies the hardware, paints, roofing and the poorest goods for the highest prices; grants a $4,000 extra bill; accepts or rejects the work at pleasure, thus compelling the contractor to submit to high prices for inferior wares or invite trouble in having his work accepted. It was at this man's dictation that an expensive, out of date hot air heating apparatus was installed in the high school building. But then he had an opportunity to sell the district an expensive gasoline engine at a big profit, which costs more to operate than would be required to heat. the entire building with a modern plant, but there would not have been any rake-off on this kind of a plant for the high mogul.

" 'The school board has never published a financial statement for the edification of the public, which is not per-

mitted to know the enormous indebtedness of the district.
He speaks of tax dodgers — from personal knowledge an
adept can.   It is true he may pay more taxes than I do,
but what little I have was earned by honest toil.   I had no
big fat hardware bill accruing from dependent contractors,
or $4,000 extras to purchance swell my bank account, or
help pay my school taxes.

"'He speaks of Æsop's Fables.   He has worn the lamb's
skin and strutted the street with pomp and arrogance pro-
claiming that no married woman should teach in the
schools as long as he was director, while, it is alleged,
some courageous teacher might be able to tell why.   He
wraps himself in a cloak of self-righteousness and thanks
the Lord that he is not like other men, and boasts of having
bested an inebriate fellow townsman in a fist fight on the
streets of Roseburg.   He should sign his plea for continu-
ance in office — yours for excessive hardware bills, $4,000
extras and a few thousand pounds $1.50 whiting in the
place of $10 kalsomine.                            'Taxpayer.'

"That the said publication was false and defamatory and
was published by the said defendants maliciously and with
the intent thereby to injure the good name and reputation
of the plaintiff and his business.   That by means of said
false and defamatory publication plaintiff was injured in
his business and reputation to his damage in the sum of
ten thousand ($10,000) dollars.   Wherefore plaintiff de-
mands judgment against the defendants for the full sum
of ten thousand ($10,000) dollars and his costs and dis-
bursements therein to be taxed."

The answer denies that the article set out in the com-
plaint is false or defamatory or published with intent to
injure plaintiff's name, reputation, or business, or that he
was damaged in any sum by such promulgation.   For a
further defense it is averred that the matter so printed is
true, and, by way of justification, it is stated that during
the years 1899 to 1901 plaintiff was a member of certain
firms engaged at Roseburg in the sale of hardware, and at
the same time he was also a director of school district No.

4 in Douglas County, and that while in such dual position plaintiff illegally had a pecuniary interest in the erection of schoolhouses and in the warming, ventilating, furnishing and repairing thereof in that district, setting out generally the sales of material, etc., made by such firms to that school district. For another defense, and in mitigation of damages, practically the same facts are set out in respect to such sales. It is also alleged that the printed matter complained of constitutes the third article of a series published in newspapers at Roseburg, setting out what purport to be copies thereof, the first signed by "A Taxpayer," and the second by plaintiff, which latter communication provoked the matter in question as a reply. The allegations of new matter in the answer were denied in the reply, and, the cause having been tried, judgment for the costs and disbursements of the action was rendered against the plaintiff, and he appeals.                    REVERSED.

For appellant there was a brief over the name of *Coshow & Rice*, with an oral argument by *Mr. Oliver Perry Coshow.*

For respondents there was a brief over the names of *F. W. Benson, George M Brown, James O. Watson* and *William Wilshire Cardwell*, with an oral argument by *Mr. Cardwell.*

MR. JUSTICE MOORE delivered the opinion of the court.

It is contended by plaintiff's counsel that the article set out in the complaint is prima facie actionable, and, this being so, the court erred in submitting to the jury the question whether or not the language was susceptible to such construction and in not charging that it was libelous per se. Defendants' counsel deny the legal propositions so asserted, and maintain that the complaint fails to state facts sufficient to constitute a cause of action, and that, as the judgment was in favor of their clients, no alleged error of the court in the trial of the cause can be considered.

An examination of the complaint will show that no innuendoes are adopted to explain the meaning of doubtful words used in the language set out, and assuming, without deciding, that some of the terms so employed are of obscure import and not in such general use as readily to be comprehended, the complaint will be scrutinized to discover whether or not it states facts sufficient to constitute a cause of action. As the solution of the principles maintained by the respective parties depends, however, upon the determination whether or not, by eliminating as surplusage the clauses containing the ambiguous words, the remaining language complained of is actionable, the questions severally presented will be treated in the order stated.

1. Printed words are libelous per se when they maliciously impute to a person the commission of a crime which is liable to punishment either at common law or by statute : 18 Am. & Eng. Enc. Law (2 ed.), 868. 2 Current Law, 714; *Upton* v. *Hume*, 24 Or. 420 (33 Pac. 810, 21 L. R. A. 493, 41 Am. St. Rep. 863); *McAllister* v. *Detroit Free Press Co.*, 76 Mich. 338 (43 N. W. 431, 15 Am. St. Rep. 318); *Belo* v. *Fuller*, 84 Tex. 450 (19 S. W. 616, 31 Am. St. Rep. 75); *Childers* v. *San Jose Mercury Co.*, 105 Cal. 284 (38 Pac. 903, 45 Am. St. Rep. 40).

2. Our statute, emphasizing the rule of public policy that a person cannot in the same transaction be a vendor and a purchaser, contains the following provision relating to an officer of a school district, to wit :

"It shall be illegal for any director, either directly or indirectly, to have any pecuniary interest in the erection of schoolhouses, or for the warming, ventilating, furnishing, or repairing the same." B. & C. Comp. § 3389, subd. 19.

When this section was adopted, the following provision as a part of the same statute was enacted, to wit :

"Any member of any school district board * * who shall violate any of the provisions of this act shall be

deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not less than twenty-five dollars nor more than one hundred dollars, or by imprisonment in the county jail not less than six months, or both such fine and imprisonment": B. & C. Comp. § 3391.

It will be remembered that the printed matter set out in the complaint contains the following clause:

"It is Woolley who lets contracts for school buildings, supplies the hardware, paints, roofing and the poorest goods for the highest prices; grants a $4,000 extra bill; accepts or rejects the work at pleasure, thus compelling the contractor to submit to high prices for inferior wares or invite trouble in having his work accepted. It was at this man's dictation that an expensive, out of date hot air heating apparatus was installed in the high school building. But then he had an opportunity to sell the district an expensive gasoline engine at a big profit, which costs more to operate than would be required to heat the entire building with a modern plant, but there would not have been any rake-off on this kind of a plant for the high mogul."

It is not directly stated in this excerpt to whom the "hardware, paints, roofing and the poorest goods for the highest prices" were supplied by plaintiff, but when it is asserted that he "accepts or rejects the work at pleasure, thus compelling the contractor to submit to high prices for inferior wares or invite trouble in having his work accepted," it reasonably appears, when the printed article is considered in its entirety, that plaintiff is charged with having made such sales to the person who had a contract for the construction of the high school building, thereby imputing that Woolley had an indirect pecuniary interest in the erection of a schoolhouse in the City of Roseburg of which he was a school director. So, too, the charge that at plaintiff's command a hot air circulating apparatus was placed in the high school building, whereby "he had an

47 Or.——40

opportunity to sell the district an expensive gasoline engine at a big profit, which costs more to operate than would be required to heat the entire building with a modern plant," imputes to him a direct pecuniary interest in the warming of a schoolhouse in that school district. These separate charges ascribe to plaintiff a violation of his duty as a school director (B. & C. Comp. § 3389, subd. 19), a breach of which is a statutory misdemeanor, and, for a conviction thereof, a fine or an imprisonment or both may be imposed: B. & C. Comp. § 3391. It will thus be seen that the language adverted to is libelous per se.

3. This brings us to a consideration of the second question, which does not appear to have been raised at the trial, but, as necessary averments are a prerequisite to securing jurisdiction of the subject-matter, the challenge on that ground is never waived: B. & C. Comp. § 72.

4. It is unnecessary, in an action for libel, to state in the complaint any extrinsic facts to show the application to the plaintiff of the defamatory matter out of which the cause of action arose, but it is adequate to aver generally that the calumnious article was published concerning the plaintiff: B. & C. Comp. § 91. In commenting upon a similar statute of New York, a text-writer says: "Where the language published is not defamatory on its face, and becomes so only by reference to extrinsic facts, the existence of those facts must be alleged in the complaint": Townsend, Slander & Libel (4 ed.), § 310. "The innuendo may always be rejected," says this author, "when it merely introduces matter not necessary to support the action": Townsend, Slander & Libel (4 ed.), § 344. If the words printed clearly impute to a plaintiff in an action for libel the commission of a crime at common law or by statute, they are actionable, and no extrinsic facts need be alleged: *Worth* v. *Butler*, 7 Blackf. 251; *Filber* v. *Dautermann*, 26 Wis. 518; *Langton* v. *Hagerty*, 35 Wis. 150. In the case

at bar that part of the printed language last quoted having imputed to plaintiff the commission of a statutory crime, is libelous per se, and this being so, the other parts of the article could have been omitted, and it was unnecessary to adopt innuendos to explain the meaning therein of the words of doubtful import. The objection interposed to the complaint is tantamount to a demurrer thereto, based on the ground insisted upon, and, as a part of the language used is adequate to sustain the action, and the import thereof is not qualified or modified by the entire printed article, the pleading is sufficient.

5. The publication of the defamatory matter, not having been denied, is admitted, and, being actionable, the court should have so charged: *Pittock* v. *O'Neill*, 63 Pa. 253 (3 Am. Rep. 544); *Pugh* v. *McCarty*, 44 Ga. 383; *Gabe* v. *McGinnis*, 68 Ind. 538; *Gregory* v. *Atkins*, 42 Vt. 237. Instead of doing so, however, the court, in addressing the jury and referring to the defendants, said:

"If you should find under the instructions I shall give you that the article was libelous, then, under the evidence in this case, they would be responsible for it."

An exception having been taken to this part of the charge, the error committed necessitates a reversal of the judgment, which is hereby ordered.

6. In view of the conclusion we have reached, it is deemed proper to consider another assignment of alleged error. The court, over objection and exception, permitted the defendant to introduce in evidence certain bills for goods, amounting to $392.39, furnished to School District No. 4, Douglas County, by the firm of which plaintiff was a member. The plaintiff, as a school director, was prohibited by the common law from purchasing from himself, as a hardware dealer, any goods that the school district might need, and though our statute (B. & C. Comp. § 3389, subd. 19) might, by implication, seem to justify

such sales; when the articles furnished were not intended to be used "in the erection of schoolhouses or for the warming, ventilating, furnishing, or repairing the same," the rule, when invoked, should be inflexible that, to avoid the appearance of favoritism in the discharge of a public duty, every attempted sale made by a person to himself as an officer should be avoided if possible. The bills in question were admissible in evidence in mitigation of damages, and as tending to corroborate the printed accusation. No other alleged error is deemed material.

For the giving of the instruction complained of the cause is remanded for a new trial.    Reversed.

---

Decided 23 January, 1906.