Argued March 4, reversed March 30, 1915.

## IVIE *v*. MINTON.

(147 Pac. 395.)

**Libel and Slander—Privilege—Question for Court.**

1. In an action for libel, whether on undisputed facts the publication was privileged is a question for the court, although, where the circumstances under which it was made are disputed, they must be determined by the jury.

> [As to promise of court and jury in prosecutions for libel, see note in 13 Am. St. Rep. 625.]

**Libel and Slander—Privilege—Voluntary Statements.**

2. Where defendant city councilman attended a public meeting of a committee investigating the police department of the city, and voluntarily made a statement to such committee that the plaintiff was keeping a disorderly house, the statement, being made by one charged to the extent of his ability with securing for the public the best results in city government, was published under circumstances of qualified privilege, and so was one for which the defendant was not liable in the absence of malice.

> [As to what are privileged communications, see notes in 15 Am. Dec. 232; 31 Am. Rep. 708.]

**Libel and Slander—Privilege—Malice—Evidence.**

3. In an action for libel against a city councilman who had stated, in a public meeting held by a committee investigating the police force of the city, that the plaintiff kept a disorderly house, the statement being qualifiedly privileged, so that malice became a material issue, evidence offered by defendant to show the sources of information upon which he based his statements was admissible to show want of malice.

From Marion: Percy R. Kelly, Judge.

Department 1.   Statement by Mr. Justice Benson.

This is an action by Maggie May Ivie against E. C. Minton for slander.   Pursuant to a resolution adopted

by the common council of the City of Salem, the mayor had appointed a committee consisting of three councilmen and three other citizens to make—

"a public investigation of charges appearing in the public press as to dishonesty and misconduct upon the part of the police officers of the City of Salem, Oregon, and report their findings to the common council not later than June 9, 1913, and also to investigate the police department generally at the same time for the purpose of reporting to the common council upon the general condition and efficiency of the same."

This committee held a number of meetings open to the general public and examined witnesses upon various topic tending to throw light upon the subject of its investigation. Such a sitting was held on June 20th. At that time the defendant, who was a councilman and chairman of the police committee, but not a member of the body then in session, appeared before it and made a public statement in regard to certain hotels in the city and the manner in which they were being conducted. Among others, he named the Cottage Hotel, which was then being operated as a hotel and rooming-house by the plaintiff. Thereafter plaintiff began this action, in which it is alleged that:

"The defendant above named in a public address maliciously, willfully, and intentionally, and for the purpose of injuring this plaintiff and her reputation and damaging her character and ruining the trade of her said family hotel, stated, declared, and published, before said assembled committee and numerous and divers citizens and newspaper men and the public generally congregated as an audience thereto. that the said Cottage Hotel, so operated and conducted by plaintiff as aforesaid, was at said time a 'disorderly house.'"

Again it is alleged:

"That at said time and place, and in the presence of said public committee, and in a public manner, and in the presence of the numerous and divers citizens of Marion County, Oregon, then assembled, the said defendant above named maliciously, wrongfully, and knowing the same to be false, scandalous, and slanderous, publicly declared and published to the public then assembled at the said committee meeting a statement wherein the said defendant willfully and wrongfully and maliciously referred to and named the said Cottage Hotel, then so conducted by plaintiff as aforesaid, to be a 'house of ill fame.' "

The defendant admits the use of the words "disorderly house," but denies using the expression a "house of ill fame." He pleads that it was a privileged occasion and a privileged communication, alleging, further, that the Cottage Hotel was not named by him except in answer to a question by some member of the committee. From a judgment in favor of plaintiff, defendant appeals.        REVERSED.

For appellant there was a brief over the names of *Mr. William H. Trindle, Mr. Albert N. Minton, Mr. Myron E. Pogue* and *Mr. Woodson T. Slater,* with oral arguments by *Mr. Trindle, Mr. Minton* and *Mr. Pogue.*

For respondent there was a brief over the names of *Mr. Carey F. Martin, Mr. John A. Carson* and *Mr. Ivan G. Martin,* with oral arguments by *Mr. Carey F. Martin* and *Mr. Carson.*

MR. JUSTICE BENSON delivered the opinion of the court.

1–3. The first assignment of error goes to the sufficiency of the complaint, but the paragraphs above set

out very clearly state the slanderous portions of defendant's alleged statement *in haec verba,* viz., a "house of ill fame" and a "disorderly house," and sufficiently allege that these expressions were spoken by defendant of and concerning the Cottage Hotel. The question as to whether or not defendant's statement was a privileged communication and as to the propriety of the action of the trial court in submitting it as a question of fact to the jury is not free from difficulty. There is no doubt as to the general rule, which is that the question of privilege is one for the court to determine and declare. Newell on Slander and Libel (3 ed.), Section 499, says:

"The theory of privilege in connection with the law of defamation involves a variety of conditions of some nicety, and also a doctrine not always of easy application to a set of facts; and, such being the case in any trial, whether civil or criminal, while the question of libel or no libel, malice or no malice, are matters of fact for a jury, the question of privilege or no privilege where the circumstances under which the communication was made are not disputed, is entirely one of law for the judge. But, where such circumstances are in doubt, the jury must first find what they were or what the defendant thought they were; that is to say, it is exclusively for the judge to determine whether the occasion on which the alleged defamatory statement was made was such as to render the communication a privileged one."

This quotation, we think, clearly and correctly states the law, and, applying it to the case at bar, we note that the evidence is practically undisputed that the defendant attended the public meeting of the committee which was investigating the conduct of the police department, and voluntarily made a statement to such committee, in which the alleged defamatory words were

used, if used at all. There is some slight discrepancy as to whether or not some portions of the alleged statement were in answer to a question propounded by a member of the committee. For the purpose of our inquiry this conflict is of small importance. It is true the occasion does not fall within the limits of absolute privilege, but, when we recall the fact that the committee was considering a subject of grave importance to good government and public morals, for the purpose of enlightening the city government, and thereby enabling it to secure a more efficient service, and that the defendant was at the time a councilman charged to the extent of his ability with securing for the public the best results in this direction, we cannot escape the conclusion that it was an occasion of qualified privilege.

"It extends to all communications made *bona fide* upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation": Newell, Slander and Libel (3 ed.), § 493.

The trial court, therefore, should have instructed the jury as above indicated. The court below also erred in sustaining objection to evidence offered by defendant tending to show the sources of information upon which he based the alleged statements. It is true, as counsel for plaintiff contends, that the defendant has not pleaded the truth as a defense, and therefore could not offer proof thereof; but he was undoubtedly entitled to show the nature and source of the information upon which the publication was based for the purpose of disproving express malice: 8 Ency. Ev. 204.

The judgment is reversed and the cause remanded for a new trial.                                        REVERSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BURNETT concur.