Submitted on briefs December 8, reversed December 28, 1926.

ROSAMUND LEE SHAW SAMUELSON *v.* J. R. VINYARD ET AL.

(251 Pac. 719.)

**Libel and Slander—School Directors' Resolution Dismissing Teacher for Relations With Pupil Held Privileged.**

Resolution of directors of school board dismissing teacher because of relations with and secret marriage to pupil *held* privileged communication, not giving rise to cause of action for libel.

Libel and Slander, 36 C. J., p. 1238, n. 94, p. 1239, n. 95, 97, 98, 99, 1, p. 1262, n. 14, p. 1269, n. 20, 21.

From Clackamas: J. U. CAMPBELL, Judge.

In Banc.

REVERSED.

Resolution of school board as privileged communication, see note in 40 L. R. A. (N. S.) 681. See, also, 17 R. C. L. 333.

For appellants there was a brief over the names of *Mr. E. V. Littlefield* and *Messrs. C. D., D. C. & E. C. Latourette.*

For respondent there was a brief over the name of *Mr. Joseph E. Hedges.*

BURNETT, J.—This is an action to recover damages for an alleged libel. The plaintiff, under her maiden name of Rosamund Lee Shaw, contracted with School District No. 86 in Clackamas County to teach in its schools. The defendants constitute the board of directors of that district. Briefly stated, the facts are that the plaintiff, then of the age of twenty-seven years, suffered herself, while teaching under the contract, to be courted by one of her pupils, a young man ten years younger. In the ardency of their affection they associated together intimately in the schoolroom long after the close of school and about a drug store in which the young man was employed outside of school hours. They were seen together at late hours of night under circumstances that evoked criticism in the neighborhood, which took shape in a petition to the defendants as directors, numerously signed by citizens of the vicinity and patrons of the school, to discharge the plaintiff. About November 10, 1924, she and the young man went to Vancouver, Washington, and were there married. In procuring the license they represented themselves to be of the age of twenty-one for the man and nineteen for the plaintiff. In their application for license they each left out part of their given names, with the purpose of preventing their marriage from becoming known where she was teaching. They planned to keep it secret until the end of the term for which the plaintiff was employed but

on receipt of the petition to dismiss her and likewise a petition of some of her pupils to be excused from her classes, the defendants as directors gave her notice to appear before them to answer the criticisms referred to. She appeared there with her attorney, disclosed the marriage and asked that she be permitted to teach and to keep the marriage secret until the end of the term as they had planned. Later the defendants as the board of directors formulated a resolution, reciting the contract and the oath included therein to support the Constitution of the state and its laws and to teach by precept reverence for law and order, likewise the reception of the complaints referred to and imprudent conduct between herself and her then husband, their misrepresentation of their ages in procuring the marriage license, and closed with an order dismissing her as such teacher. These resolutions were entered at large on the record book of the district. They were adopted in the presence of the directors, the clerk of the district, and an attorney whom they had employed to advise them. It is charged also that the attorney afterwards published them by delivering a copy of them to a newspaper reporter. The resolutions and recitals constitute a document too long to be inserted here in full. The answer in various forms avers matter to the effect that the conduct of the plaintiff during her connection with the school as teacher was inconsistent with the moral and prudent aspects of her oath and contract, and avows that the defendants acted in the matter as recited in the complaint and answer, in good faith pursuant to their official duty as directors; with honest motive and without malice or ill-will towards the plaintiff. The new matter is challenged in important particulars by the reply.

At the close of the plaintiff's case, a motion was made by the defendants for judgment of nonsuit. This was denied. At the close of all the testimony they moved for a directed verdict in their favor which was also overruled. The trial resulted in a verdict and judgment for the plaintiff and the defendants appealed.

There is no material dispute about the facts. The passage of the resolution directing the plaintiff's summary dismissal from her position and the recording thereof in the minutes of the directors' meeting are admitted. The essence of the dispute is whether or not the statement made in the resolution and its recitals are covered by privilege.

"The principle upon which privileged communication rests is that of public policy, and peculiarly so in the case of absolute privilege. In order to be shielded from liability by the publication of defamatory words, on the ground of privilege, the communication must be a privileged one, uttered on a privileged occasion, by a privileged person, to one within the privilege." 36 C. J. 1238.

The case is governed substantially by *Ivie* v. *Minton,* 75 Or. 463 (147 Pac. 395). In that case the common council of the City of Salem had appointed a committee consisting of three councilmen and three other citizens to make a public investigation of the charges appearing in the newspapers as to the dishonesty and misconduct of certain police officers in that city. and to investigate the police department generally. In a public meeting of that committee the defendant, having been called as a witness and being questioned by some of the committee with respect to the hotel kept by the plaintiff, stated that it was a "disorderly house," but denied using the

expression charged against him in the complaint that it was "a house of ill fame." The plaintiff having recovered judgment, the defendant appealed, and Mr. Justice BENSON, writing for the court, held that inasmuch as there was some dispute about whether the defendant had used the latter expression, the case did not fall within the limits of absolute privilege. This depended upon the dispute of fact about making part of the statement imputed to the defendant.

Here, however, there is no dispute about the making of the writing of which the plaintiff complains as libelous. The defendants avowed their authorship of it and claim that their action was official, made for justifiable purposes in the pursuit of the duties of their office without any malice or ill-will whatever. There is no evidence on the part of either party of any actual malice. The defendants were not personally acquainted with the plaintiff except in a very limited degree on the part of one of them and the plaintiff does not impute to either of them any personal ill-will toward herself. In the discharge of their duties to their district and to the pupils of the school the defendants had a public official duty to perform. Their resolution was the statement to each other before the clerk whose duty it was to write the proceedings of the meeting and in the presence of their attorney whom they had the authority to employ as counsel in the matter. This was a privileged communication by privileged persons to privileged parties on a privileged subject within the scope of their authority. It gives rise to no cause of action in favor of the plaintiff as for libel. This is not an action for the breach of their contract with her to teach in the schools. The complaint must be

judged by its allegations shown in the complaint to be one for libel. The evidence clearly disclosed a privileged communication. A nonsuit ought to have been entered at the close of the plaintiff's case.

The judgment will, therefore, be reversed and the cause remanded to the Circuit Court, with directions to enter judgment of nonsuit.

REVERSED AND REMANDED, WITH DIRECTIONS.