Argued October 6, affirmed November 23, 1955

# GRUBB *v.* JOHNSON ET AL

289 P. 2d 1067

*Bruce W. Williams,* Salem, argued the cause for appellants. On the brief were Williams & Skopil, Salem.

*James O. Goodwin,* Oregon City, argued the cause for respondent. With him on the brief was Glenn R. Jack, Oregon City.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

BRAND, J.

The plaintiff Grubb in an action against the defendants Johnson and Enger received a verdict and judgment for $500 general damages and $1,000 punitive damages for libel. The defendants appeal. The original complaint alleged that the defendants are partners in the operation of an insurance agency under the assumed name of Federal Oregon Agency and that prior to 18 December 1951 the plaintiff was a licensed insurance agent employed by the defendants, and:

"III.

"That on the 18th day of December, 1951, the said defendants filed false charges against the plaintiff causing a revocation of plaintiff's insurance license which was restored upon a hearing on the 28th day of January, 1952."

It is further alleged that the acts of the defendants were deliberate, malicious and with knowledge that the charges were false and were done for the purpose of damaging plaintiff. It is alleged that the plaintiff was unable to follow the "avocation" of selling insurance from December 18, 1951 to January 28, 1952. There were further allegations concerning damage to his reputation. The defendants filed an amended answer in which they admitted that they were partners engaged in the management of the insurance agency and denied all other allegations of the complaint. They then affirmatively alleged that on or about the 18th of December 1951 they "did file with the Insurance Commissioner of the State of Oregon a revocation of solicitor's license as required by law." They alleged

that any revocation of the plaintiff's license was done by the Insurance Commissioner. As a second and separate defense they allege the truth of the supposed false charges claimed by the plaintiff. As a third separate defense they allege that the information set forth by the defendants in the revocation of solicitor's license was filed in accordance with the laws of the State of Oregon and that the defendants were under a duty to supply such information. Finally it is alleged that the defendants did not in any other way publish said words or information. The reply was a general denial.

The first witness for the plaintiff was the Insurance Commissioner for the State of Oregon. He identified a document entitled "Revocation of Solicitor's License" which was offered and received in evidence. Counsel for defendant stated that he had no objection thereto. The instrument which is plaintiff's Exhibit 1 reads as follows:

"To the Insurance Commissioner of the State of Oregon, Salem, Oregon:

This is to certify that the person named above as solicitor has ceased to be a solicitor for the undersigned and you are hereby directed to revoke the license heretofore issued to said solicitor to solicit insurance on my behalf. During the course of employment Francis W. Grubb on or about November 17, 1949, until November 30, 1951 withheld and misappropriated to his own use funds in the amount of approximately $3,397.79. This amount has been substantiated by a careful audit of all records by a Certified Public Accountant and is available for inspection at any time. It is my recommendation, based upon these misappropriations that Francis W. Grubb be denied any further license or privilege granted by the Insurance Commissioner of the State of Oregon."

The instrument is signed by defendant George E. Johnson. Thereupon the plaintiff was permitted by the trial court to amend paragraph III of his complaint, to read as follows:

"III.

"That on December 19, 1951, defendant filed with the Insurance Commissioner of the State of Oregon certain false charges against plaintiff, to-wit: That plaintiff between November 17, 1949, and November 30, 1951, withheld and misappropriated to his own use funds in excess of $3,000.00; and defendants did recommend said Insurance Commissioner, that plaintiff should be denied any further license or privilege granted by said Insurance Commissioner, and said acts of defendants caused a suspension of plaintiff's eligibility to sell insurance in this state from the 18th day of December, 1951, until January 28, 1952."

The facts above set forth form the basis for defendants' first assignment of error wherein it is asserted

"That the Court erred in allowing plaintiff to amend his complaint after opening argument of counsel and evidence introduced by plaintiff and the amendment allowed changed plaintiff's cause of action."

The defendants rely upon OCLA, § 1-1006, now ORS 16.390, which provides that the court in furtherance of justice and upon such terms as may be proper, may at any time before the cause is submitted, allow a pleading to be amended by conforming the pleading to the facts proved "when the amendment does not substantially change the cause of action * * *." Defendants contend, first, that the amendment stated a new cause of action in violation of the statute, and under his second assignment of error he argues that since the amended complaint set forth a new cause

of action and since the amendment was not made within one year after the cause accrued, the action was barred by the one-year statute of limitations. OCLA, § 1-207, as amended by Laws 1947, Chapter 492, now ORS 12.120. It is apparent that if the amendment was properly allowed and did not state a new cause of action, then the first and second assignments are without merit.

It is obvious that the amendment to the complaint was made to "conform the pleading * * * to the facts proved." The question is whether it substantially changed the cause of action. The defendants' position as set forth in the brief is confusing. They argue that the original complaint did not set forth the necessary allegations for a complaint in libel and allege that the amended complaint "did state a cause of action for libel." Yet they also assert that the original complaint was not vulnerable to demurrer. In fact, they did not test it by demurrer. As an apparent afterthought and for the first time in oral argument here, they suggested that the original complaint sounded in malicious prosecution and that therefore the amended complaint worked a substantial change in the cause of action.

We think the original complaint was intended by the plaintiff and was understood by the defendants to be an attempt to plead a cause for libel. It was not in form or substance an action for malicious prosecution. Plaintiff alleged that he was employed by the defendants who were an insurance agency. He was therefore under the statute, Oregon Laws 1947, Chapter 373, page 601, an insurance solicitor, and Exhibit 1, supra, shows that such was the case. Being such a solicitor, the Insurance Commissioner was required to revoke his license upon the written request of the employers. Oregon Laws 1947, Chapter 373, § 3, 3.

■■ The defendants had employed him, and, as appears in Exhibit 1, they *directed* the Commissioner "to revoke the license heretofore issued to said solicitor to *solicit insurance on my behalf."* (Italics ours.) They did not prosecute the plaintiff—they fired him. The original complaint did not state any cause of action for malicious prosecution. Nor was it a good complaint for libel. The allegation that defendants filed false charges against plaintiff was insufficient as a statement of the libel under any rule of law. The original complaint was at most a defective statement of a cause of action for libel. It would have been vulnerable to a demurrer. The amendment did not state a new cause of action. It corrected a defect in the old one. *Ross v. Robinson,* 174 Or 25, 147 P2d 204; *Drake Lumber Co. v. Paget Mortgage Co.,* 203 Or 66, 76, 274 P2d 804; *Elliott v. Mosgrove,* 162 Or 507, 91 P2d 852, 93 P2d 1070. *Cooper v. Armour,* 42 F 215, 8 LRA 47, does not support defendants' contention. The same must be said of the following cases cited by defendants: *Carnahan Mfg. Co. v. Beebe-Bowles Co.,* 80 Or 124, 156 P 584; *Foste v. Standard Ins. Co.,* 26 Or 449, 38 P 617. Assignment of Error III is waived.

The fourth assignment of error reads as follows:

"That the Court erred is not granting the appellant's motion for an order of involuntary nonsuit at the conclusion of the respondent's case in chief for the reason that the defamation claimed was one of absolute privilege to the Insurance Commissioner and that it was incumbent upon the Court under the evidence to make such a finding."

■ As preliminary to a consideration of privilege we observe that the complaint as amended adequately charged the plaintiff with the crime of embezzlement. The defendants concede that "by the amendment

allowed after the commencement of trial, the complaint did state a cause of action for libel.'' We agree. It set forth the essential portion of the libel in language identical to that used in the letter written by defendants to the commissioner. It was not necessary that the accusation of crime should be in the technical language required in an indictment. *Hurd v. Moore,* 2 Or 85; *Woolley v. Plaindealer Publishing Co.,* 47 Or 619, 84 P 473; *Lowe v. Brown,* 114 Or 426, 233 P 272, 235 P 395; *Peck v. Coos Bay Times Pub. Co. et al.,* 122 Or 408, 259 P 307; *Stevens v. Wilber,* 136 Or 599, 300 P 329; Gatley on Libel and Slander, 4th ed, p 54.

*Rio Grande Valley Gas Co. v. Caskey* (Tex Civ App) 33 SW2d 848, may be an authority as to the insufficiency of the original complaint but not as to that instrument after amendment.

## ABSOLUTE PRIVILEGE

■ The general rule is well stated in American Jurisprudence, as follows:

"An absolutely privileged communication is one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person who claims to be injured thereby, and even though it may have been made maliciously.

"The class of absolutely privileged communications is narrow and is practically limited to legislative and judicial proceedings and other acts of state, including, it is said, communications made in the discharge of a duty under express authority of law, by or to heads of executive departments of the state, and matters involving military affairs. The privilege is not intended so much for the protection of those engaged in the public service and in the enactment and administration of law, as for

the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages.'' 33 Am Jur 123, Libel and Slander, § 125.

See also, Odgers on Libel and Slander, 6th ed, p 187; 3 Restatement of the Law, Torts, § 584, p 224. On the other hand, if the publication was only conditionally or qualifiedly privileged, a different rule has been established under our decisions.

In *Peck v. Coos Bay Times Pub. Co., et al.,* supra, a portion of the alleged libel came within the doctrine of qualified privilege. It was held that the court should have instructed that there could be no recovery by reason thereof unless it were established by the greater weight of the evidence that the defendants in the exercise of such privilege were not acting in good faith but with actual malice.

"* * * However, the defense of qualified privilege or that of fair comment and criticism avails nothing relative to the charge that plaintiff committed a premeditated and vicious assault or that he was a 'double-crosser.' Privilege ends where defamation begins. Relative to charge of commission of crime, truth was the only defense. * * *" *Peck v. Coos Bay Times Pub. Co. et al.,* 122 Or 408, 422, 259 P 307. See also, *Ivie v. Minton,* 75 Or 483, 147 P 395.

In an action for slander this court approved the following definition of qualified privilege:

" 'A communication made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it con-

tain criminating matter, which, without this privilege, would be slanderous and actionable, and this though the duty be not a legal one, but only a moral ·or social duty of imperfect obligation.' " *Cribbs v. Montgomery Ward & Co.*, 202 Or 8, 13, 272 P2d 978.

In that case the court made it clear that even if such reciprocal duty existed and the occasion was privileged, the plaintiff, in order to recover, would be required "to introduce evidence in the first instance of actual or express malice so as to destroy the privilege." This decision establishes the rule that timely proof of actual malice destroys privilege of the kind defined therein.

The cases in which libel is absolutely privileged are enumerated by Prosser, as follows:

"(1) Judicial proceedings.
"(2) Legislative proceedings.
"(3) Proceedings of executive officers charged with responsibility of importance.
"(4) Publications made with the consent of the plaintiff.
"(5) Communications between husband and wife." Prosser on Torts, Hornbook Series, 2d ed, § 95, p 606.

It has been repeatedly indicated that the courts are unwilling to extend the doctrine of absolute privilege. We quote:

"Absolute immunity has been confined to a very few situations where there is an obvious policy in favor of permitting complete freedom of expression, without any inquiry as to the defendant's motives. * * *" Prosser on Torts, Hornbook Series, 2d ed, § 95, p 606. See also, Gatley on Libel and Slander, 4th ed, p 168; 33 Am Jur 123, Libel and Slander, § 125.

The Oregon cases, with only two apparent exceptions to be later noted, have limited the doctrine of absolute privilege to cases falling within the following categories: Those which involve the publication of statements by a judge in the course of judicial proceedings (*Irwin v. Ashurst,* 158 Or 61, 274 P2d 1127); pleadings or publications filed by an attorney in the course of litigation (*McKinney v. Cooper,* 163 Or 512, 98 P2d 711); private litigants or private prosecutors or defendants in a criminal prosecution (*Strycker v. Levell and Peterson,* 183 Or 59, 190 P2d 922); allegations by a party in a divorce action (*Pitts v. King et al.,* 141 Or 23, 15 P2d 379, 472); testimony of a witness in court (*Cooper v. Phipps,* 24 Or 357, 33 P 985); pertinent statements by counsel in a judicial proceeding (*Irwin v. Ashurst,* supra).

Even in cases involving pleadings in a judicial controversy and testimony of witnesses in a judicial proceeding, the court has not always adhered to the rule of absolute privilege.

In *Pitts v. King et al.,* supra, it was said that the weight of authority is to the effect that defamatory matter in a pleading is privileged "if pertinent and relevant to the issues and made in good faith for the purposes of the case."

In *Cooper v. Phipps,* supra, the court recognized a conflict of authority and stated that some of the cases hold that if a witness "abuse his privilege by making false statements, which he knew to be impertinent and immaterial, and not responsive to questions propounded to him, for the purposes of malicious defamation, he may, upon an affirmative showing to that effect, be held in damages for libel or slander." 24 Or 357, 364.

In *Mount v. Welch et al.*, 118 Or 568, 247 P 815, defamatory matter was contained in a writing filed with the county court, protesting against the payment of a bill. This court said:

"* * * But, when a person acting under a sense of duty makes a communication which he reasonably believes to be true, he must be careful not to be led away by his honest indignation, into exaggerated, unwarrantable or malicious expressions. The privilege extends to nothing which is not justified by the occasion."

The two apparent exceptions mentioned above are *Ivie v. Minton*, 75 Or 483, 147 P 395, and *Samuelson v. Vinyard*, 120 Or 197, 251 P 719. In *Ivie v. Minton*, statements were made by a city councilman to the effect that the plaintiff kept a disorderly house. The statements were made at a public hearing before a committee appointed to investigate the conduct of the police department. Even in this case it was held that the defendant enjoyed only qualified privilege although he was a councilman charged with the duty of securing good government in the city.

In *Samuelson v. Vinyard*, the plaintiff, a school teacher, sued the members of the school board for libel. It was said that the case was governed substantially by *Ivie v. Minton*. The libel was contained in a resolution of the board discharging plaintiff and setting forth reasons thereof. The court said that the evidence clearly disclosed a privileged communication. It did not expressly state whether the privilege was absolute or conditional but the court took pains to assert that there was no evidence of actual malice.

No Oregon decision has been found which extends an absolute privilege to any case like the one at bar and the inferences to be drawn from our decisions militate strongly against any such extension.

The defendants cite three cases from other jurisdictions on which they strongly rely.

In *Higgins v. Williams Pocahontas Coal Co.*, 103 W Va 504, 138 SE 112, the plaintiff sued his employer for libel. The plaintiff alleged that he had made a claim before the Workmen's Compensation Commission seeking compensation for an injury sustained to his eye while working for the defendant in the year 1924. After investigation, and in May, 1925, an award of compensation was made allowing to the plaintiff instalment payments of 100 weeks. In June, 1925, the defendant company wrote the commissioner to the effect that the plaintiff had been practically blind for five years as the result of an injury suffered in another state. The letter asked for an investigation and sought authority to hold up delivery of any checks to the plaintiff. The court held that the defendant's letter was absolutely privileged. It is true that it was presented when no hearing was pending before the commission, but the court pointed out that there was no finality to the commissioner's award and that its jurisdiction in the case was continuing. It also held that the defendant had an interest in the matter because its record and therefore its contributions to the fund were effected by the award to the plaintiff.

Even if we should extend the doctrine of absolute privilege beyond the limits now set by our decisions, we would still hold that the facts in the decision in the Higgins case are distinguishable from the case at bar, as will be later pointed out.

The next case cited by the defendants is *Independent Life Ins. Co. v. Rodgers,* 165 Tenn 447, 55 SW2d 767. The plaintiff was an agent in the employ of the insurance company. He left the employment and thereafter he secured from the commissioner of insurance

a license to sell insurance for another company. After the second license had been issued the defendant company wrote to the insurance commissioner, stating that the plaintiff

"took things into his own hands and collected his money before a final had been made against him and before we had time to check up and see how much he is short, but it will be slight, but we understand that he is going to work for the Federal Union of Cincinnati, Ohio, and is going to work in Chattanooga.

\* \* \* \* \*

"\* \* \* we procured license for these men and paid for them, and we think probably it will be plenty of time for them to go to work for some other company when they have a clean bill of health from us."

We have grave doubt whether the letter was libelous per se, but the Tennessee court so held. The court then construed the letter as a charge against the plaintiff going to his eligibility to work for the new company. On receipt of the defendant's letter the commissioner notified the plaintiff thereof and "asked for his explanation." Whether a hearing was had, or with what results, does not appear. On appeal the court held in substance that the commissioner was acting as a court and that the defendant's letter was absolutely privileged. We are unable to follow its reasoning. The court said:

"'It is said that a statement in effect of a libellous nature, which is palpably untrue, known to be untrue by him who made it, and dictated by malice, ought to be the subject of a civil remedy, though made in the course of a purely military enquiry. This mode of stating the question assumes the untruth, and assumes the malice. If by any process of demonstration free from the defects of human judgment the untruth and malice could be

set above and beyond all question or doubt, there might be ground for contending that the law of the land should give damages to the injured man.

" 'But this is not the state of things under which this question of law has to be determined. Whether the statements were in fact untrue, and whether they were dictated by malice, are, and always will be, open questions upon which opinions may differ, and which can only be resolved by the exercise of human judgment. And the real question is whether it is proper on grounds of public policy to remit such questions to the judgment of a jury. The reasons against doing so are simple and obvious. A witness may be utterly free from malice, and may yet in the eyes of a jury be open to that imputation, or again, the witness may be cleared by the jury of the imputation, and may yet have had to encounter the expenses and distress of a harassing litigation. * * *' ''

The foregoing was quoted with approval by the Tennessee court from *Dawkins v. Rokeby,* 45 LJQB 8, 9 Eng. If we were to adopt such reasoning we might as well abandon the right to jury trials in tort actions. The case is distinguishable from the one at bar.

Shortly after the decision in the Rodgers case another libel suit against the same insurance company, based on the same letter, by the same defendant, came before the Supreme Court of Tennessee. (*Independent Life Ins. Co. v. Hunter,* 166 Tenn 498, 63 SW2d 668.) The Supreme Court of Tennessee distinguished the Rodgers case from that of Hunter. The distinction is important for our decision here. After reference to the Rodgers case the court said:

"The case now before us (Hunter's case) is different. Hunter had left the employ of the Independent Life Insurance Company when this letter of the president of that company was written to

the insurance commissioner. He had procured no certificate of authority authorizing him to work for any other company. We are unable, therefore, to see how the insurance commissioner can be said to have dealt with Hunter's case judicially. The charges made against Hunter did not present any matter of which the insurance commissioner had jurisdiction.

The court then pointed out that the license of Hunter only authorized him to serve the defendant company. It then said:

"It necessarily follows that when Hunter left the employ of the Independent Life Insurance Company, he was without authority to transact business for any insurance company. He was not entitled to act as agent for any insurance company until a new license, as the commissioner calls it, was procured by him, because his old license only permitted him to work for the Independent Life Insurance Company. He could not work for another company, moreover, until that company procured a certificate of authority for him."

After receipt of the defendant's allegedly libelous letter, the commissioner merely wrote the plaintiff asking him for an explanation, but since the plaintiff then had no license and had applied for none, it was held that the commissioner was not acting like a court, the defendant had no absolute privilege, and the verdict and judgment for the plaintiff was reinstated.

The third case cited by the defendants upon the issue of absolute privilege is *Algana v. New York & Cuba Mail S. S. Co.*, 279 NYS 319, 155 Misc 796. The case was before the Supreme Court, Special Term, for New York County. The plaintiffs were former employees and commissioned radio operators. They sued their employers for libel, based on a letter written to the Federal Radio Commission, protesting against the

plaintiffs' conduct in presenting a demand for new contracts of employment just at sailing time of a vessel. The court in a memorandum opinion indicated that the letter was sent for the purpose of having the plaintiffs disciplined, but concluded that the letter was not libelous per se. Then, by way of dictum, the court said, "Further, I think the letter absolutely privileged." The letter was said to be a complaint and the radio commission had jurisdiction to hear the charges. In our opinion this case is entitled to no weight and is distinguishable as well.

We return to the pending case.

██ The statute authorizes the insurance commissioner to revoke a license or refuse to issue a license to a solicitor for cause. Oregon Laws 1947, Chapter 373, p 605. But the statute also provides that the commissioner "shall revoke any * * * solicitor's license upon the written request * * * of the employing agent *or* for failure to comply with the provisions of this act." Oregon Laws 1947, Chapter 373, p 606. (Italics ours.) The defendants had applied for a solicitor's license for plaintiff "that he may solicit * * * insurance solely on my behalf * * * unless sooner revoked." The revocation notice on which the charge of libel is based stated, first of all, that the plaintiff "has ceased to be a solicitor for the undersigned and you are hereby *directed* to revoke the license heretofore issued to said solicitor to solicit insurance on my behalf." (Italics ours.) The revocation was automatic and mandatory. The commissioner had only a ministerial duty to perform. He testified that the notice by the defendants "constituted the revocation immediately." Upon the revocation, which occurred merely because of the termination of plaintiff's employment, there was no matter on which to exercise quasi judicial power, and would

be none unless at some later time application should be made for a new license. The evidence shows that after the revocation an insurance company applied for an agent's license for Mr. Grubb. He had previously had only a solicitor's license. When the new application was made the insurance company asked for a hearing "to clear the record of Mr. Grubb", and a hearing was held. After the revocation and before the request for a hearing, there was no issue before the commissioner, and the revocation can not be deemed a request or prayer for a hearing. True, the defendants wrote "It is my recommendation, based upon these misappropriations that Francis W. Grubb be denied any further license or privilege granted by the Insurance Commissioner of the State of Oregon." But, in so writing, they were mere volunteers. That recommendation was applicable only to a situation which was then nonexistent. No hearing was possible unless and until someone again applied for a license for the plaintiff. The "Revocation of Solicitor's License" was no part of a quasi judicial proceeding and the doctrine of absolute privilege was not applicable.

■■ The court instructed the jury on the law of qualified privilege and advised them that truth was a defense. The instructions were at least as favorable to the defendants as the situation merited. There was substantial evidence tending to show malice on the part of the defendants, and the finding of the jury established for the purposes of this appeal that the defendants were motivated by actual malice. Concerning the defendants' plea of truth, we observe that in their brief the defendants did not even argue that the charge of misappropriation of funds was true. There was evidence of a dispute as to the true state of the account between the plaintiff and the defendants, but

whether the charge of misappropriation of funds was sustained was a question for the jury. The burden of proving truth was, of course, on the defendants. Thus, under the instructions, the verdict constituted a finding that the libel was both false and malicious.

 The fifth and last assignment of error reads as follows:

"That the court erred in not striking from the respondent's amended complaint at the conclusion of the evidence, the entire allegation within paragraph V relative to damage to him and his reputation and standing in the community for the grounds and for the reason there was no evidence introduced concerning any publication except to the Insurance Commissioner of the State of Oregon."

This assignment is without merit. Since the words published were libelous per se, damages will be presumed as a consequence of its publication. *Marr v. Putnam,* 196 Or 1, 29, 246 P2d 509; *Peck v. Coos Bay Times Pub. Co.,* supra, 122 Or 408, 259 P 307; *Barnett v. Phelps,* 97 Or 242, 191 P 502; 3 Am Jur, Libel and Slander, § 282; Odgers on Libel and Slander, 6th ed, p 304; 53 CJS 362, Libel and Slander, § 239.

The issue of general damages was properly submitted to the jury and they were not limited to the award of nominal damages only. It may be added that there was evidence of publication to one or more other persons, in addition to the publication to the commissioner.

The judgment is affirmed.