Argued October 4; reversed October 25; rehearing denied and opinion modified November 22, 1932

PITTS *v.* KING ET AL.

(15 P. (2d) 379, 472)

*H. H. King* (Elton Watkins, of Portland, on the brief) for appellants.

*L. W. O'Rourke* and *C. G. Schneider,* both of Portland, for respondent.

CAMPBELL, J. On May 21, 1930, defendant, H. H. King, filed a suit in the circuit court for Multnomah county for a divorce from defendant, Marguerite E. King, on the grounds of cruel and inhuman treatment. In paragraph V of said complaint, he alleged that this treatment consisted of the said Marguerite E. King accepting and encouraging the attentions of another man, namely S. F. Pitts. He further alleged that he remonstrated with her regarding her conduct, but in spite of such remonstrance she continued in her course of conduct, and went on automobile rides with said S. F. Pitts and that she and said Pitts became extremely friendly; that he, H. H. King, requested said S. F. Pitts to remain away from his home and that thereafter defendant, Marguerite E. King, entertained said Pitts at their home surreptitiously; that he, H. H. King, came home unexpectedly one afternoon and found his home locked up, and at the said time the said Marguerite E. King and S. F. Pitts were in the house by themselves. He further alleged that defendant, Marguerite E. King, and S. F. Pitts, in spite of his remonstrance continued their aforesaid course of conduct.

Complaint and summons in said suit were served on defendant, Marguerite E. King, who thereafter ap-

peared by attorney, and filed a motion for suit money and attorney fees. On said motion, an order was made requiring plaintiff to pay $65 as attorney fees.

Thereafter said Marguerite E. King discharged her attorney and failed to make any further appearance in the case.

H. H. King, through his attorney, had a default entered against her and sometime thereafter the case was tried and a decree of divorce entered.

On May 24, 1930, three days after the above-mentioned divorce complaint was filed, plaintiff herein, S. F. Pitts, being the S. F. Pitts mentioned in the above divorce suit, filed the instant action for libel against H. H. King, alleging as libelous the matters set up in paragraph V of H. H. King's divorce complaint regarding the actions of defendant Marguerite E. King in connection with S. F. Pitts. He alleged that he was a minister of the Gospel; that he was the founder and president of the Pacific Coast Associated Undenominational Churches with headquarters in Gresham, Oregon, and pastor of the Gresham Undenominational Temple; that he always enjoyed a good reputation in the community in which he lived and that by reason of the publication of the said libelous matter he was damaged in the sum of $75,000.

To said complaint, defendant H. H. King filed an answer admitting that he had filed the pleading referred to in plaintiff's complaint, but denied each and every other allegation. And then, for a separate answer and defense and in the nature of a counterclaim, he alleged, in effect, the same state of facts in reference to S. F. Pitts, that he alleged in his divorce complaint and asked for damages against the plaintiff in the sum of $25,000 for the alienation of the affections of his wife.

Plaintiff filed a motion asking that defendant make his answer more definite and certain, which was denied. He then filed a motion to strike, which was denied. He then filed a motion, supported by affidavit, asking permission to file an amended complaint and to make Marguerite E. King, H. C. Larsen, and Ella Larsen additional defendants, which motion was granted.

On March 27, 1931, he filed an amended complaint in which he alleges that he is an ordained minister of the Gospel, and founder and president of the Pacific Coast Associated Undenominational Churches and pastor of the Gresham Undenominational Temple. He then alleges, ''that in the spring of 1930, H. C. Larsen and Ella Larsen, H. H. King, and Marguerite E. King, entered into a willful, wanton and malicious conspiracy against plaintiff in his private and ministerial capacity to destroy and blacken his reputation.'' And to cause him ''to be unfrocked and his ordination as a minister of the Gospel to be cancelled and annulled by the church and to have his connection with the Pacific Coast Associated Undenominational Churches cancelled and annulled.'' He further alleges ''the said defendants and each of them did willfully, wantonly and maliciously agree to contribute and did contribute to a fund which was to be used and which was used in carrying out the aforesaid conspiracy; that the defendants and each of them being possessed of the spirit of Beelzebub * * * caused to be filed and defendant H. H. King maliciously, wantonly and wickedly did file and commence a suit for divorce, in which said suit said H. H. King appeared as plaintiff, that the said defendants and each of them did in furtherance of said plan and conspiracy * * * agree and jointly caused to be alleged in said complaint and said H. H.

King did willfully, wantonly, wickedly and maliciously allege what is known as paragraph V of said complaint in words and figures as follows:'' (Then follows a complete quotation of paragraph V.) He then alleges that all matters set out in paragraph V, so far as they relate to him, are false and were placed in said complaint maliciously and for the purpose of injuring said plaintiff.

He further alleges that all of the proceedings taken in said divorce case by said Marguerite E. King were a part of the conspiracy aforesaid. He then alleges that the answer filed by the defendant H. H. King, in the answer and the counterclaim, in which defendant alleges that the plaintiff herein alienated the affections of defendant Marguerite E. King from defendant H. H. King, was the result of said conspiracy and that the defendants caused H. H. King to file said alleged answer and counterclaim; that the said answer was published in the newspapers to his injury.

The defendants, Marguerite E. King, Ella Larsen, and H. C. Larsen, filed separate answers. Each of said answers amounted to a general denial.

The defendant, H. H. King, answered to the amended complaint and which answer was to all practical effects a reiteration of the allegations of the first answer including the counterclaim.

At the close of plaintiff's case in chief, defendants moved for a non-suit, which was denied. Defendants thereupon introduced their testimony, and plaintiff introduced his testimony in rebuttal. The cause was thereupon submitted to the jury. Verdict and judgment for plaintiff. Defendants appeal.

■ The gravamen of plaintiff's complaint is the alleged conspiracy of the defendants.

"A conspiracy is a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose or to accomplish some purpose not in itself criminal by unlawful means." 5 R. C. L. 1060.

When plaintiff rested his case in chief, the only evidence introduced regarding defendants H. C. Larsen and Ella Larsen, or Mrs. H. H. King, was the testimony of plaintiff who testified that he had a misunderstanding with the Larsens about the early part of the year 1930, and that the church board had a meeting and caused the following letter to be written:

"Gresham Or
April 16, 1930.

Mr. and Mrs. H. C. Larsen
    Gresham Or
We the official board of the Undenominational Temple, feel that it is our duty, in the *feare* of God, and for the sake of His Work, to suspend your names from our Organization, so that you might feel free to work elsewhere.
    Very sincerely & Respectfully
        Official Board
        R. E. Cenn Sec'y

P. S. We all join in wishing you God Speed.
        O. B."

It appeared from plaintiff's testimony that Mr. and Mrs. Larsen did not take kindly to this summary dismissal and in a reply, more vigorous than scholarly, questioned the authority of the official board in the premises and demanded a church trial. This demand was not granted.

On February 18, 1930, the church board received the following letter, (quoted exactly as to punctuation, spelling and capitalization):

"Portland Oregon
Feb 18th 1930

Board of Directors
Gresham Undenominational Temple.
Dear Bro.s in christ JESUS.

Owing to certain facts. whitch we do not care to mention by letter. we the undersigned request that our names be erraced from the membership roll of the church.

And may the LORD/.s richest blessing be upon you ALL.

Mrs. O. D. Dark.
Marjorie King.
Homer H. King.
Mr. & Mrs. J. D. Neels."

Plaintiff testified that the annual meeting of the church was held on the first Monday in April, 1930, there being present from 100 to 150 of the members, also Mr. and Mrs. Larsen. That during the progress of the meeting, Mr. Larsen demanded that there should be a church trial to inquire into the reason of the resignation of the defendants H. H. King and Mrs. H. H. King; claiming that there were some aspersions cast upon the name of the pastor, S. F. Pitts. In this connection, plaintiff was asked:

"Q. What was said and done at this meeting?

"A. Mr. Larsen jumped up and said if—he had a bunch of people outdoors who were going to come in and they was against the pastor and it was objected to on the grounds as heretofore said, they were not members of the society and the meeting was not called for the purpose of holding a church trial. But it had been called and notice placed upon the door twenty-one days prior—

"Q. (Interrupting) Never mind the notice, what happened that night?

"A. Mr. Larsen jumped up and said that—used the plural, 'We will send you to the penitentiary if it costs us $5000 to do so.' * * *

"Q. Did the other members come in that were outside if you know?

"A. They did not.

* * *

"Q. When did you have the next difficulty with any or either of the defendants?

"A. Well, that is about the last trouble that I have had with them in a personal way. They were dropped from the church roll."

There was testimony that defendants, H. H. King and Mrs. King, and two others were in an automobile on the street near the meeting house at the time the foregoing incident was taking place.

Mr. Pitts was asked regarding his relations with the defendants H. H. King and Mrs. H. H. King:

"Q. Just tell us in detail now.

"A. I frequented their home and was—always a welcome there and never felt any unkindness nor had an unkind word spoken to me in their home. I was never used with more kindness and courtesy than by Mr. and Mrs. King. We have never had an unkind word. I heard Mr. King—I heard that Mr. King was saying something—

"Q. (Interrupting) Don't say what you heard.

"A. I was going to tell you what I said in conversation with Mr. King. I asked Mr. King if he had any grievance against me and he put his arms around me and said, 'No, I have not.' That was in the temple at Gresham. And further than that we have never had—

"Q. (Interrupting) When was that?

"A. That was a few months before they withdrew from the church there."

There was also the testimony of Mr. G. Schultz who testified that he lived in a cabin in the auto camp operated by H. C. Larsen from the Spring of 1929 to August of 1930, when he left on account of a disagreement with the Larsens; that he met the defendant H. H. King about the middle of April at Mr. Larsen's house, at which time Mr. King said in the presence of defendants Mr. and Mrs. Larsen:

"A. Well, Mr. King said he had been before the grand jury; he didn't say what it was, but he said that they would not have anything to do with it because it was too old.

"Q. Didn't he say anything else?

"A. All he said was that he thought he would go up in front of the postoffice and wait for Mr. Pitts, and then take a poke at him then Mr. Pitts would have him arrested and he would get him in court.

"Q. Is that all that was said at that time?

"A. He said that they were going to run him out of the church at Gresham.

"Q. What else of anything was said?

"A. Well, I didn't hear anything else Mr. King said. Mr. Larsen and Mrs. Larsen, I think stated they were going to get him out of the church.

"Q. Now did you have any conversation at any later date with either Mr. King or Mr. and Mrs. Larsen concerning the same matter?

"A. Yes, Mrs. Larsen came down to the cabin one night and said—

"Q. (Interrupting) Who was present?

"A. Me and my wife and Mrs. Larsen.

"Q. Just the three of you?

"A. And said that Mr. King had decided to sue his wife for divorce and name Mr. Pitts as the reason, that he intended to live in the same house, and after this was all settled to remarry.

\* \* \*

"A. This last conversation was along the first day of May somewhere, along the first of May."

It would only be by the greatest stretch of imagination that one could draw a conclusion from the evidence that these defendants or either of them conspired to libel the plaintiff. This state of the evidence leaves the jury to speculate or guess as to whether defendants conspired as alleged, or did anything in connection with defendant King's divorce suit.

■ The most that could be said is that the testimony had a tendency to prove that the defendants might have had a motive to do some injury to plaintiff.

It will be observed that plaintiff's complaint alleges several overt acts:

(1) That the defendants agreed to and did contribute to a fund to be used in carrying out the conspiracy. There is not any evidence of that fact.

(2) That the defendants being possessed with the spirit of Beelzebub caused Mr. King to sue Mrs. King for a divorce. There is no evidence that defendants Larsen or Mrs. King advised or consulted either Beelzebub or Mr. King in this regard.

(3) That defendants caused Mr. King to allege in said suit for divorce the misconduct alleged in paragraph V of the complaint in said suit. There is no evidence that the defendants Larsen or defendant Mrs. King had any knowledge of the allegations of said complaint, prior to its filing.

(4) That defendants caused Mrs. King to employ an attorney in said suit and also caused her to discharge her attorney. There is no evidence of either of these facts.

(5) That defendants procured an order of default in said divorce suit. There is no evidence that defendants Larsen knew anything about said default.

(6) That defendants induced Mrs. King to consent to a decree being entered against her in said divorce suit. There is no evidence of this. Neither is there any evidence that any of the defendants except Mr. King had anything to do with preparing or advising in the preparation of H. H. King's counterclaim to plaintiff's suit herein. There is no competent evidence to establish a conspiracy.

■ The pleading and proof is insufficient to take the alleged defamatory matter out of the privilege class as to defendant H. H. King. The allegations complained of in the divorce suit are pertinent and relevant to the issues to be determined therein. There is no competent evidence that defendant H. H. King did not file and prosecute his said divorce case in good faith.

■ The authorities are not uniform on what is and what is not privileged in a pleading but the great weight of authority is to the effect that defamatory matter in a pleading is privileged if pertinent and relevant to the issues, and made in good faith for the purposes of the case: *Randall v. Hamilton,* 45 La. Ann. 1184 (14 So. 73, 22 L. R. A. 649 and note) ; *Kemper v. Fort,* 219 Pa. 85 (67 Atl. 991, 123 Am. St. Rep. 623, 12 Ann. Cas. 1022, 13 L. R. A. (N. S.) 821 and note).

"All documents necessary to or properly used in a judicial proceeding are absolutely privileged; e. g. all pleadings or affidavits sworn in the course of a judicial proceeding before a court of competent jurisdiction, are privileged." Odgers on Libel and Slander (6th Ed.) 200.

"In a civil action, whatever the complainant may allege in his pleading as or in connection with his grounds of complaint can never give a right of action for libel. The immunity thus enjoyed by a party complaining extends also to a party defending; whatever

one may allege in his pleading by way of defense * * * or by way of counterclaim * * * can never give a right of action for libel." Townshend on Slander and Libel (4th Ed.), Sec. 221.

"Though the early English cases required the testimony of a witness to be relevant or pertinent to the matters in issue in order to render it privileged, it is now well settled in England that judges, parties, counsel and witnesses are absolutely excepted from liability to an action for defamatory words published in the course of judicial proceedings. No action will lie for defamatory statements made or sworn to in the course of a judicial proceeding before any court of competent jurisdiction." Newell, Slander and Libel (4th Ed.) Sec. 358.

"The general rule in America is the same as in England as respects judges, but as to parties, counsel and witnesses is generally qualified to the extent that the defamatory words must be applicable, pertinent or relevant." Id., Sec. 359.

■ Denial of non-suit will not be reversed when the defect is covered by subsequent testimony which is properly disclosed by the record: *Johnson v. Underwood,* 102 Or. 681 (203 P. 879); *Weygandt v. Bartle,* 88 Or. 310 (171 P. 587); *Cornely v. Campbell,* 95 Or. 345, (186 P. 563, 187 P. 1103).

We have carefully and painstakingly read the 275 pages of testimony introduced by defendants, and the 75 pages introduced by plaintiff in rebuttal to see whether there was any evidence supplied to overcome the lack of evidence when plaintiff rested his case, but found none.

There are several errors assigned as to the admissibility of testimony and instructions of the court, but, taking the view we do, it is unnecessary to pass upon them.

The motion for a non-suit should have been granted. The judgment of the circuit court will be reversed and the cause remanded with instructions to dismiss. It is so ordered.

BEAN, C. J., BROWN and BELT, JJ., concur.

Rehearing denied and former opinion modified November 22, 1932

ON PETITION FOR REHEARING

(15 P. (2d) 472)

CAMPBELL, J. Respondent has filed a petition for a rehearing on the grounds that our former opinion did not dispose of defendant H. H. King's answer and counterclaim.

■■ Defendant King's counterclaim was not such a one as could have been set up in an action for libel. It did not arise "out of the contract or transaction set forth in the complaint, as the foundation of plaintiff's claim." Plaintiff's cause of action did not arise "on contract." Defendant King's counterclaim did not arise "also on contract." Oregon Code 1930, § 1-611.

Our former opinion should be modified to the extent that the judgment of the circuit court will be reversed and the cause remanded with instructions to dismiss both as to the complaint and the counterclaim of defendant, H. H. King.

It is so ordered.