Argued November 12, affirmed December 16, 1959

# RAMSTEAD *v.* MORGAN
347 P. 2d 594

*Gordon A. Ramstead,* Eugene, argued and filed a brief in propria persona. With him on the brief was B. G. Skulason, Portland.

*Windsor Calkins,* Eugene, argued the cause for respondent. On the brief was Clyde N. Johnston, Eugene.

*Robert F. Maguire,* Portland, argued and filed a brief for the Oregon State Bar as amicus curiae. With him on the brief was Curtis W. Cutsforth, Portland.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL and REDDING, Justices.

O'CONNELL, J.

This is an action of libel. Plaintiff is an attorney duly licensed to practice law in this state. The alleged

libelous statements were contained in a letter written to the chairman of the Lane county grievance committee of the Oregon State Bar. The letter is set out below. The defendant answered, pleading truth, privilege and mitigation. After plaintiff had begun to testify defendant interposed an objection on the ground that the letter did not contain defamatory matter and on the further ground that if it did the statements made in the letter were privileged under ORS 9.550. The trial court sustained the objection on the ground that the statements contained in the defendant's letter, if defamatory, were absolutely privileged. The plaintiff appeals from a judgment of involuntary nonsuit.

The letter written by the defendant to the grievance committee of the Bar read as follows:

"Junction City, Oregon
June 15, 1956

"Robert B. Carmichael, Chairman
Lane County Grievance Committee
U. S. National Bank Building
Springfield, Oregon

Dear Sir:
Prior to February 5, 1951, the undersigned had regularly employed Gordon A. Ramstead as his attorney. On February 5, 1951 I went to the office of Mr. Ramstead and left with him a check for $4,000.00, with instructions he was not to deliver the same until such time as he was assured that title to certain timber lands which I had agreed to purchase from Pearl Clark Kelly and Allen Kelly, her husband, were free and clear of all encumbrances.

I am a logger by occupation and I explained to Mr. Ramstead, my attorney, that I did not have time to handle the matter and requested he go ahead

and pay the money when he knew that I was fully protected, which Mr. Ramstead agreed to do.

At that time there was a lawsuit pending in Douglas County concerning this timber land, about which I knew nothing but about which Mr. Ramstead was fully aware. Mr. Ramstead cashed the check on February 8, 1951, and disbursed the money to Mr. and Mrs. Kelly shortly thereafter.

I have been informed that at that time the Kellys owed Mr. Ramstead some money, that he deducted his fee from the $4,000.00 and in addition, Mr. Ramstead withheld $93.00 from the money he paid to the Kellys for expenses. A photostatic copy of the check and the endorsements thereon is enclosed with this letter.

Some time later my wife and I were in Mr. Ramstead's office and he told me he had prepared a contract he wanted my wife and myself to sign. A photostatic copy of the contract is also enclosed. My wife refused to sign the contract because it was not in accordance with our original agreement. However, Mr. Ramstead advised me that I would have to sign it, which I did.

This contract, although it bears the date of February 5, 1951, was not prepared and signed until after he had expended the money in violation of our contract and agreement. The Kellys did not sign the contract at the time I did.

I am writing this letter for the purpose of filing a charge before the Grievance Committee against Gordon A. Ramstead for what I have been advised is unethical conduct on his part. I desire that the Bar Association inquire as to whether or not Mr. Ramstead was also representing the Kellys at the time, and whether or not the relationship of client and attorney existed between Mr. Ramstead and the Kellys at the time I delivered the money to him.

I might add that Mr. and Mrs. Kelly lost the lawsuit in Douglas County, the Court decreeing they had no interest in the property above mentioned;

the Kellys are insolvent and I have no means of collecting anything from them.

My wife and I are willing to appear before your Committee and testify at any time you may desire. I live at Junction City, and my phone number is WY 82567.

Respectfully submitted,
s/ Lester Morgan

cc: Mr. John H. Holloway
    Secretary, Oregon State Bar
    502 Pittock Block
    Portland 5, Oregon
Encls. 2"

The controlling issue on appeal is whether the defendant was protected by an absolute privilege in making the statements contained in the letter set out above.

■ The absolute privilege to publish defamatory matter under the circumstances to which the privilege applies is based upon the ground that "there are certain relations of life in which it is so important that the persons engaged in them should be able to speak freely that the law takes the risk of their abusing the occasion and speaking maliciously as well as untruly, and in order that their duties may be carried on freely and without fear of any action being brought against them, it says: 'We will treat as absolutely privileged any statement made in the performance of these duties.' " *Moore v. Weaver,* 2 K B 520, 521 (1928). Generally to the same effect see *Moore v. Sater,* 215 Or 417, 335 P2d 843 (1959); *Grubb v. Johnson,* 205 Or 624, 289 P2d 1067 (1955); Gatley on Libel and Slander (4th ed), p 168 et seq.; Newell, Slander and Libel (4th ed), p. 387 et seq.; Odgers on Libel and Slander (6th ed), p. 187;

O'Sullivan and Brown, The Law of Defamation, p 56; Prosser on Torts (2d ed) 607, § 95; 3 Restatement, Torts, Intro. note Ch 25, Title B, p 223; Veeder, Absolute Immunity in Defamation, 9 Colum L Rev 463 (1909).

The absolute immunity attaches to statements made in the course of, or incident to a judicial proceeding. *McKinney v. Cooper,* 163 Or 512, 98 P2d 711 (1940), (objections to estate accounting); *Irwin v. Ashurst,* 158 Or 61, 74 P2d 1127 (1938), (judge and counsel); *Pitts v. King,* 141 Or 23, 15 P2d 379, 472 (1932), (pleadings). And so, statements made by parties, witnesses, and affiants are included within the privilege. *Parker v. Title & Trust Co.,* 233 F2d 505 (9th Cir 1956), rehearing denied 237 F2d 423, (party); *Strycker v. Levell & Peterson,* 183 Or 59, 190 P2d 922 (1948), (party and affiant); *Cooper v. Phipps,* 24 Or 357, 33 P 985 (1893), (witness); 3 Restatement, Torts 231-234, §§ 587, 588.

The rule of absolute privilege is applicable not only to judicial proceedings but to quasi-judicial proceedings as well. *Smith v. O'Brien,* 88 F2d 769 (D.C. Cir 1937) (statement by Tariff Commissioner); *McAlister & Co. v. Jenkins,* 214 Ky 802, 284 SW 88 (1926) (findings of Real Estate Commission); 1 Harper & James 427, § 5.23 (1956).

■ Statements made before various administrative boards and commissions have been recognized as absolutely privileged. *Simpson v. Oil Transfer Corporation,* 75 F Supp 819 (N.D. New York 1948) (former employer's letter to Labor Department); *Duncan v. Atchison, T. & S. F. R. Co.,* 72 F 808 (9th Cir 1896) (pleading before Interstate Commerce Commission); *Parker v. Kirkland,* 298 Ill App 340, 18 NE2d 709 (1939) (statement before county Tax Appeal Board);

*Kimball v. Ryan,* 283 Ill App 456 (1936) (written objections submitted to Election Board); *Haskell v. Perkins,* 165 Ill App 144 (1911) (charges filed before Board of Education); *Jarman v. Offutt,* 239 N C 468, 80 SE2d 248 (1954) (affidavit to Lunacy Commission); *Fenning v. S. G. Holding Corp.,* 47 NJS 110, 135 A2d 346 (1957) (landlord's letter filed with Rent Control Authority replying to tenant's objections to rent increase); *Rainier's Dairies v. Raritan Valley Farms, Inc.,* 19 N J 552, 117 A2d 889 (1955) (petition to Director of Milk Industry); *Pacific Employers Ins. Co. v. Adams,* 196 Okla 597, 168 P2d 105 (1946) (physician's report attached to motion made to Industrial Accident Commission); *Aransas Harbor Terminal Ry. Co. v. Taber,* 235 SW 841 (Tex 1921) (letter in answer to complaint filed before Railroad Commission); *Connellee v. Blanton,* 163 SW 404 (Tex 1913) (application to Governor for pardon); *Higgins v. Williams Pocahontas Coal Co.,* 103 W Va 504, 138 SE 112 (1927) (statement by company to Workmen's Compensation Commissioner after award had been made); *Larkin v. Noonan,* 19 Wis 82 (1865) (petition to Governor for removal of a sheriff).

We have held that statements made in a petition to the probate court by friends of plaintiff's client protesting the appointment of plaintiff as guardian were absolutely privileged. *Moore v. Sater,* supra. Cf., *Gregory v. State Industrial Accident Commission,* 205 Or 643, 288 P2d 1069 (1955), where the privilege was not recognized because the proceedings were ministerial rather than judicial or quasi-judicial.

The privilege is made applicable to proceedings before administrative bodies having the power to grant and revoke licenses. *Lininger v. Knight,* 123 Colo 213, 226 P2d 809 (1951) (petition to County Commissioners

requesting revocation of liquor license); *Powers v. Vaughan,* 312 Mich 297, 20 NW2d 196 (1945) (information given to Common Council considering issuance of license to a masseur); *Shumway v. Warrick,* 108 Neb 652, 189 NW 301 (1922) (letter to Banking Board protesting grant of charter to plaintiff); *Alagna v. New York & Cuba Mail S.S. Co.,* 155 Misc 796, 279 NYS 319 (1935) (letter to Federal Radio Commission); *Independent Life Ins. Co. v. Rodgers,* 165 Tenn 447, 55 SW2d 767 (1933) (statement to State Insurance Commissioner); *Reagan v. Guardian Life Ins. Co.,* 140 Tex 105, 166 SW2d 909 (1942) (statement to Board of Insurance Commissioners). Some courts have held that statements made to licensing agencies are entitled only to a qualified privilege. *Walker v. Hunter,* 86 Colo 483, 283 P 48 (1929) (petition to County Commissioners seeking revocation of dance hall license); *Weiman v. Mabie,* 45 Mich 484, 8 NW 71, 40 Am Rep 477 (1881) (affidavit to Superintendent of Schools); *Coloney v. Farrow,* 5 App Div 607, 39 NYS 460 (1896) (liquor license granted by Board of Excise); *McKee v. Hughes,* 133 Tenn 455, 181 SW 930 (1916) (petition to Mayor and Alderman to revoke merchant's license).

■ The proceedings may be regarded as quasi-judicial in character in spite of the fact that the body before whom the proceedings are conducted is not the creature of the legislature. *Barrows v. Bell,* 73 Mass 301 (1856) (State Medical Society); *Farnsworth v. Storrs,* 59 Mass 412 (1850) (Church); *Shurtleff v. Stevens,* 51 Vt 501 (1879) (minister's association); *Barratt v. Kearns,* 1 K B 504, 74 L J 318 (1905) (commission appointed by Bishop as provided by legislation).

There are relatively few cases dealing with the specific type of situation presented to us in the instant case. Disbarment proceedings have been recognized

as "judicial" in character. In *Little v. Allen,* 149 Kan 414, 87 P2d 510 (1939) a newspaper commented on a report made by a commissioner specially appointed by the court to hear evidence and make findings of fact and conclusions of law incident to a disbarment proceedings instituted by the state board of law examiners. It was held that the publication by the defendant was a fair comment "respecting a judicial proceeding." In *Ex parte Dozier,* 262 Ala 197, 77 S2d 903 (1953) the board of commissioners of the State Bar in entertaining disbarment proceedings was held to be a "court" for the purpose of applying a statute of limitations.

A report of a committee appointed by the court to investigate the conduct of an attorney has been treated as absolutely privileged. Thus, in *James v. Brandon,* 61 Ga App 719 7 SE2d 305 (1949) it was held that the right of a court to disbar an attorney carries with it the right to investigate the attorney's conduct. The court then said:

"* * * The personal report of a committee, appointed by the court to do such investigating, to the court appointing it, is as privileged as the formal charges filed by the court or other person authorized to do so, and as other judicial proceedings, so far as libel is concerned." 7 SE2d at page 306.

The case of *Lilley v. Roney et al.,* 61 QBD 727 (1892) is directly in point. In that case the defendants sent a letter of complaint to the Incorporated Law Society, charging plaintiff, a solicitor, with unprofessional conduct. The complaint was found to be groundless, whereupon plaintiff brought an action of libel against the defendants for the statements made in the original letter of complaint and in the affidavit which was filed with the letter. The action was dismissed by the trial court on the ground that the alleged

libelous publication was made in the course of a judicial proceeding and was, therefore, absolutely privileged. In affirming the dismissal of the action the appellate court said:

> "The claim ought to have been for maliciously instituting proceedings, not for libel. The letter with affidavit is the form given for setting in motion what are admittedly judicial proceedings. It is true that the burden of proving want of reasonable and probable cause will thereby be thrown upon the plaintiff; but if the proceedings are shown to have been instituted without reasonable or probable cause he would be entitled to damages. I think leave ought to be given to the plaintiff to amend his pleadings to this effect if he wishes to do so." 61 L J QB at page 727.

The court in *McCurdy v. Hughes,* 63 N D 435, 248 NW 512, 87 ALR 683 (1933) clearly recognizes that a complaint made to the supreme court of the state, charging an attorney with misconduct is absolutely privileged. The same view is expressed in *Cowley v. Pulsifer,* 137 Mass 392, 50 Am Rep 318 (1884). In *Wilson v. Whitacre,* 4 Ohio Cir Ct Rep 15 (1889) it was held that a letter addressed to the supreme court of the state protesting the admission of plaintiff to the bar was absolutely privileged. The court said:

> " * * * Is such communication, when made, absolutely privileged? We concede that this doctrine ought not to be extended by the courts. One who falsely and maliciously accuses another of crime, should suffer the penalty, unless he is shielded by another principle of law, viz: that public policy demands that those who so act shall be exempt from an action for libel or slander for so doing, leaving them otherwise responsible for their conduct. After considerable hesitation, we are of the opinion that the question should be answered in the affirmative, that a case like this is clearly within the spirit, if not the letter, of the established

rule. The court acting in a judicial capacity, and in a matter in regard to which it had complete jurisdiction, with inherent power to settle the question, by hearing testimony or otherwise, as to the character of an applicant for admission to the Bar, received from a lawyer a communication relevant to that question, and accepts and acts upon it. This state of fact being shown or admitted in the case, we think made the communication an absolutely privileged one." 4 Ohio Cir Ct Rep at page 20-21.

■ Defamatory statements contained in papers filed in a disbarment proceeding were held absolutely privileged in *Preusser v. Faulhaber,* 16 Ohio Cir Ct Rep (NS) 308 (1909). The fact that the charges were filed with the clerk of the court rather than with the judge was regarded as of no importance in determining whether the privilege exists. *Preusser v. Faulhaber,* 22 Ohio Cir Ct Rep (NS) 222 (1909). Written questions to be asked witnesses in a pending disbarment proceeding were held to pertain to a judicial inquiry and absolutely privileged in *Youmans v. Smith,* 153 N Y 214, 47 NE 265 (1897).

Plaintiff relies upon *Lee v. Battery & Supplies Co.,* 323 Mo 1204, 23 SW2d 45 (1929). There the plaintiff, a lawyer, brought an action for libel against several defendants charging them with making defamatory statements in a letter written to the grievance committee of the St. Louis Bar Association. It was held that the defendants were protected by a qualified privilege. The court regarded the letter to the bar association as the equivalent of communications to a church, the stockholders of a corporation or a medical society, which communications, it was said, have been held to be qualifiedly privileged. The court considered the case before it as falling outside the class of judicial proceedings. We think that this view is too narrow.

As shown by the cases previously discussed, an absolute privilege has been recognized in various situations involving quasi-judicial proceedings where the need for immunity from liability for defamation is much less than it is where the integrity of the bar is involved. The cases referred to above recognizing an absolute privilege in disciplinary proceedings appeals to us as the better view. Our reasons for favoring this view will be discussed below.

The fact that the complaint made by the defendant to the grievance committee did not eventuate in a formal hearing before a committee of the bar or before the Board of Governors does not preclude the application of the rule of absolute privilege. The privilege extends to pleadings and other papers made a part of a judicial or quasi-judicial proceeding even though such proceeding is in its preliminary stage and no formal judicial action has been taken. The scope of the privilege is defined generally in 3 Restatement, Torts, § 587, as follows:

> "A party to a private ligitation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of a judicial proceeding in which he participates, if the matter has some relation thereto."

An absolute privilege has been granted in a variety of circumstances where defamatory statements have been made in connection with the institution of proceedings. *Robinson v. Home Fire & Marine Ins. Co.*, 242 Iowa 1120, 49 NW2d 521 (1951) (statement by defense attorney to witness and opposing counsel before trial); *White v. United Mills, Inc.*, 240 Mo App 443,

208 SW2d 803 (1948) (notice of separation of employment filed with Labor Commissioner by employer); *Simon v. Stim,* 11 Misc2d 653, 176 NYS2d 475 (1958) (affidavit and letter by attorney to presiding Justice); *Brown v. Central Savings Bank,* 64 NYS2d 551 (1946) (notice of eviction and other papers essential in commencing action under regulations of the Office of Price Administration); *Zirn v. Cullom,* 187 Misc 241, 63 NYS2d 439 (1946) (statement in answer, affidavit filed in response to motion, and letter by defendant's attorney suggesting a discontinuance); *Campbell v. New York Evening Post,* 245 NY 320, 157 NE 153 (1927) (pleadings filed but not judicially acted on); *Strycker v. Levell and Peterson,* 183 Or 59, 190 P2d 922 (1948) (affidavit by party and a witness preliminary to hearing); *Pitts v. King,* 141 Or 23, 15 P2d 379, 472 (1932) (all documents and all pleadings); *Langford v. Vanderbilt University,* 199 Tenn 389, 287 SW2d 32 (1956) (pleadings filed but no judicial action taken thereon); *Reagan v. Guardian Life Ins. Co.,* 140 Tex 105, 166 SW2d 909 (1942) (written statement impugning plaintiff's honesty filed with Insurance Commissioner by insurance company, plaintiff's former employer); Odgers, Libel & Slander (6th ed) 198.

The privilege has been recognized in connection with judicial proceedings where no function of the court or its officers is invoked. *Albertson v. Raboff,* 46 Cal2d 375, 295 P2d 405 (1956) (statements made in a recorded notice of lis pendens fall within the privilege); *Richeson v. Kessler,* 73 Idaho 548, 255 P2d 707 (1953) (letter by substitute counsel defamatory of replaced counsel sent to presiding judge and attorneys appearing); *Zirn v. Cullom,* supra, (letter by defendant's attorney suggesting a discontinuance); *Rodgers v. Wise,* 193 S C 5, 7 SE2d 517 (1940) (letter

to mutually interested counsel); 30 So Cal L Rev 107 (1956).

In *McCurdy v. Hughes*, 63 N D 435, 248 NW 512, 87 ALR 683 (1933) the court held that "The making of a complaint, against an attorney at law, to the Supreme Court is a preliminary step in a proceeding authorized by law."

If the defendant's letter had set in motion the bar's trial procedure and he had been called before the trial committee to testify as a witness the quasi-judicial character of the proceeding would warrant the application of the rule of absolute privilege. *Kimball v. Ryan*, 283 Ill App 456 (1936); *Fenning v. S. G. Holding Corp.*, 47 NJS 110, 135 A2d 346 (1957); *Higgins v. Williams Pocahontas Coal Co.*, 103 W Va 504, 138 SE 112 (1927).

Considering the purpose of the rule, we think that relevant statements made in a complaint designed to initiate such quasi-judicial action should also be protected. *Schmitt v. Mann*, 291 Ky 80, 163 SW2d 281 (1942). *See*, Note, Liability of Bar Associations for Libel During Disbarment Investigations, 23 Iowa L Rev 83 at 86 (1937).

Plaintiff contends that ORS 9.550 (2) is controlling in the present case. That section reads as follows:

"The officers of the state bar, the members of its investigating, grievance and trial committees, and its investigators and attorneys acting as prosecutors or counsel, have the same privileges and immunities from civil and criminal proceedings arising by reason of their acts as such, as prosecuting and judicial officers of this state. No person who in good faith has made a complaint as to the conduct of an attorney, or who has given information or testimony relative to a proposed or pending proceeding for misconduct against an attorney, shall

be answerable for any such act in any proceeding, except for perjury committed by him."

It will be noted that the immunity from suit extended to persons who make complaints as to the conduct of an attorney is limited to the situation in which the complaint is made in good faith. This, plaintiff argues, clearly covers the case before us. Our attention is called to the contrast between the first and last part of the subsection, the last part providing for immunity to persons making complaints to the bar and the first part extending immunity to officers of the bar, members of the disciplinary committees and counsel in disciplinary proceedings. It will also be noted that good faith is made a condition to immunity where a person makes a complaint as to the conduct of an attorney, but that no such condition is attached to the giving of information or testimony relative to a proposed or pending proceeding.

The attorneys for the Oregon State Bar as amicus curiae suggest that the term "good faith" used in the statute can be given effect consistent with the interpretation that an absolute privilege was intended to apply to statements made by complainants. We are first reminded that the common law gave absolute immunity to any person involved in a judicial proceeding, whether the person was a party, witness, counsel, juror or judge. It is argued that the words "in good faith" were not intended to qualify this indefeasible immunity but were inserted in the statute to preserve to the person defamed his common law action for malicious prosecution. Some support for this position can be found in the fact that at the time of the enactment of ORS 9.550 there were adjudicated cases recognizing the right of a defamed person to recover in an action of malicious prosecution even

though an action for defamation was not available because of the absolute nature of the privilege. Thus, in *Lilley v. Roney,* supra, the court said: "The claim ought to have been for maliciously instituting proceedings, not for libel," and leave to amend the pleadings in order to effect this change was granted to plaintiff. In *Wallach v. Schmer,* 82 NYS2d 202 (1948) the court recognized that although the defendant enjoyed an absolute privilege with respect to a cause of action in defamation, he had no such privilege with respect to the cause of action for malicious prosecution. In *Albertson v. Raboff,* 46 Cal2d 375, 295 P2d 405 (1956) the court said at page 410:

"* * * It may be noted at the outset that the fact a communication may be absolutely privileged for the purposes of a defamation action does not prevent its being an element of an action for malicious prosecution in a proper case. The policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied. See Jaffe v. Stone, 18 Cal.2d 146, 159-160, 114 P.2d 335, 135 A.L.R. 775; Metzenbaum v. Metzenbaum, 121 Cal. App.2d 64, 68, 262 P.2d 596; 3 Restatement, Torts, p. 380, Introductory note; Veeder, Absolute Immunity in Defamation; Judicial Proceedings, 9 Columb.L.Rev. 463, 470."

■ Although the draftsman of ORS 9.550 may have been acquainted with the distinction to which we have just alluded, we think that the legislature, in clearly separating the other classes given an unqualified immunity from those who file a complaint alleging misconduct, evinced the intent to limit the privilege of complainants.

So construed, the statute purports to protect attorneys in this state from those who cannot prove that their actions in presenting complaints charging misconduct on the part of an attorney were prompted by justifiable motives. Since the declaration of such a policy directly touches upon the traditional function of the judiciary in disciplining the members of the bar serving under it, we must decide whether the statute so construed is a violation of the separation of powers doctrines.

■ Unquestionably, the legislature may act authoritatively with respect to some matters which affect the judicial process. E.g., *Bergeron, Petitioner,* 220 Mass 472, 107 NE 1007 (1915). The limits of legislative authority are reached, however, when legislative action unduly burdens or unduly interferes with the judicial department in the exercise of its judicial functions. *Ex parte Steckler,* 179 La 410, 154 So 41 (1934); *Re Opinion of the Justices,* 279 Mass 607, 180 NE 725, 81 ALR 1059 (1932); *Clark v. Austin,* 340 Mo 467, 101 SW2d 977 (1936); *State ex rel Bushman v. Vandenberg,* 203 Or 326, 276 P2d 432, 280 P2d 344 (1955); *State ex rel Bailey v. Ellis,* 156 Or 83, 66 P2d 995 (1937).

No area of judicial power is more clearly marked off and identified than the courts' power to regulate the conduct of the attorneys who serve under it. This power is derived not only from the necessity for the courts' control over an essential part of the judicial machinery with which it is entrusted by the constitution, but also because at the time state constitutions, including our own, were adopted the control over members of the bar was by long and jealously guarded tradition vested in the judiciary. *In re Cate,* 270 P 968 (Cal 1928); *In re Peck,* 88 Conn 447, 91 A 274, LRA 1915A 663 (1914); *In re Keenan,* 287 Mass 577,

192 NE 65, 96 ALR 679 (1934) ; *State ex rel McCormick v. Winton,* 11 Or 456, 5 P 337 (1884) ; *State v. Cannon,* 206 Wis 374, 240 NW 441 (1932).

If, then, ORS 9.550 is to have force in prescribing the privilege extended to persons initiating disciplinary proceedings, it can do so only if the policy there expressed does not constitute a serious incursion into the exclusive domain of this court. We are of the opinion that the statute does make such an incursion and that in this respect, at least, the statute is unconstitutional.

Our conclusion rests upon the basic premise that disciplinary proceedings are carried on as one of the processes of this court. It makes no difference whether the process is denominated judicial or quasi-judicial; it is an integral part of the functioning of the judicial branch of government and the process includes the filing of an informal complaint by one who wishes to charge an attorney with unprofessional conduct.

The courts can be fully effective in serving the public only if they can be seen by the people as a symbol of impartial judgment. To maintain this necessary symbolism it is essential that there be no doubt, even in the mind of the most suspicious, of that impartiality and of the integrity of those entrusted with the legal machinery which insures it. We regard it as important, therefore, that there should be no impediment to free criticism of the bench and bar lest it be interpreted by the public as a veil to hide judicial vices. The trial judge in the present case, speaking from the bench, aptly expresses the view we take:

"Whatever may be the hardship on a particular attorney in a particular case, proper administration of justice requires that there be a forum in which a client who is unlearned in the law may state a complaint, real or supposed, so that it may be

investigated, and, if necessary, judicially determined.

"If the privilege were removed from such communication the persons who believed themselves aggrieved by their lawyers would have, in addition to any imaginary doubt they might have about the fairness of the hearing before a tribunal of lawyers, would also have the threat that if they failed to prove their complaint they would be faced by the risk and expense of defending a damage action brought by the lawyer complained against.

"Such a fear on the part of the general public, whether it was groundless or not, would have the effect of impeding and restricting the necessary function of the Bar in policing its own ranks.

"Therefore, unless it appears from the face of the pleadings that the communication complained of exceeded the legitimate purpose of the intent to state a complaint in the proper forum, it is absolutely privileged, and there can be no trial of the underlying motives of the defendant in instituting the complaint."

The idea is also expressed in *Spriggs v. Cheyenne Newpapers,* 63 Wyo 416, 182 P2d 801, 815 (1947)

"* * * It is of the highest importance that the public should know when attorneys, as officers of the court, are charged with disloyalty thereto. It is only through the possession of such knowledge that the people can intelligently deal with the members of the legal profession and intrust business to them."

The judgment of the trial court is affirmed.