Argued and submitted March 10, affirmed June 23, 1980

# STAFFORD,
*Appellant,*
*v.*
# GARRETT, et al,
*Respondents.*

## (No. A7708-11127, CA 13495)

613 P2d 99

Gerald R. Pullen, Portland, argued the cause and filed the brief for appellant.

William L. Hallmark, Portland, argued the cause for respondents. William L. Hallmark and William A. Davis, Portland, filed the brief for respondents. With them on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges, and Tongue, Judge Pro Tempore.

CAMPBELL, J.

## CAMPBELL, J.

This is a law action for malpractice wherein the complaint alleged that the defendant law firm was negligent in advising the plaintiff to settle a case against a third party. The trial court tried the case without a jury and found that the plaintiff did not establish that the defendants were negligent by a preponderance of the evidence. We affirm.

Prior to November 26, 1973, the plaintiff had been employed by Roderick Enterprises, Inc. On that date R. V. Roderick, as president of that corporation, wrote a letter to the Oregon State Board of Health. The letter stated that when the plaintiff was employed by the corporation he either borrowed or took some money belonging to the welfare patient trust account and that he did not deserve an administrator's license. In January 1974 Roderick had a telephone conversation with one Catherine M. Plantz of Health Care Facility Consultants of Aberdeen, South Dakota. Roderick told Plantz that the plaintiff had been discharged for misuse of company funds.

In May 1974 the plaintiff entered into a contract with the defendant law firm to pay it an hourly fee plus costs to bring an action against R. V. Roderick and Roderick Enterprises, Inc. (Roderick) for damages because of "certain libelous statements * * * concerning the alleged theft from patient trust funds of approximately $1,100 * * *."

Pursuant to this agreement the defendants prepared and, on behalf of the plaintiff, filed a complaint against Roderick. The complaint alleged three causes of action. Roderick demurred to the complaint on the ground "* * * that the facts set forth therein do not state a cause of action against defendants for the reason that the allegedly slanderous and libelous statements are absolutely privileged." The demurrer was overruled.

[783]

The plaintiff filed an amended complaint alleging only two causes of action. The first cause was based on the letter of November 26, 1973, to the Oregon State Board of Health. The second cause was based on the Plantz telephone conversation in January 1974. Roderick did not demur to the amended complaint, but filed an answer admitting the execution of the letter and the telephone conversation with Plantz. The answer further alleged that the statements in both the letter and telephone conversation were true and were of "mutual concern" to the participants.

The plaintiff's defamation case against Roderick was tried to a jury. At the close of the testimony Roderick moved for a directed verdict on the ground that the letter to the Oregon State Board of Health was absolutely privileged. The motion was denied. The jury returned a verdict in favor of the plaintiff for $2,000 general damages and $50,000 punitive damages on the first cause of action and $100 general damages and $300 punitive damages on the second cause of action.

Roderick moved for a judgment NOV or, in the alternative, for a new trial. The motion for a new trial set forth four separate grounds. The motion for judgment NOV was denied. The trial court granted the motion for a new trial, but the order did not recite upon which ground.

The defendant law firm advised the plaintiff that the case should be settled. Their advice was that even if the trial court's order for a new trial was error, Roderick could cross-appeal from the order overruling the demurrer and prevail because in their opinion the letter to the Oregon State Board of Health was absolutely privileged. After a number of conferences and considerable correspondence between the plaintiff and the defendants, the case was settled for the sum of $10,000.[1]

[1] A sizable part of the $10,000 was paid to the defendant law firm in payment of its legal fee due under its employment contract with the

In May 1977 the plaintiff filed the complaint in this case alleging the defendants were negligent in advising the plaintiff to settle the Roderick case. The plaintiff sought damages for the difference between the verdict and the amount of the settlement, plus a judgment for the amount of the attorney fees previously paid. The case was tried without a jury. Members of the bar testified as expert witnesses for both the plaintiff and defendants.[2] The trial judge found in favor of the defendants:

> " 'The Court finds generally that the plaintiff has not established by a preponderance of the evidence that the services rendered by the defendants, in recommending settlement under all of the circumstances then existing, failed to meet the standards required of reasonably competent attorneys in the community, and therefore finds in favor of the defendants and against the plaintiff * * *.' "

The plaintiff has appealed to this court setting out a sole assignment of error:

> "The court erred in failing to find the defendant negligent as a matter of law in giving his client negligent advice on appellate practice and procedure."

The defendants in their brief in this court state that the plaintiff must (1) establish that he would have in fact prevailed on appeal; and (2) prove that defend-

plaintiff. On appeal the plaintiff argues the defendants had a possible conflict of interest in recommending the settlement because it guaranteed the payment of the entire fee. The defendants answer by saying that from the outset they had strong doubts about the plaintiff's case because of the "absolute privilege" question and would not agree to take the case on a contingent fee basis. "The plaintiff was anxious to clear his name and therefore agreed to pay defendants on an hourly basis notwithstanding the risk he would recover nothing." Rsp. Br. at 5. Because of the result we reach in this case we need not consider this question.

[2] The witnesses for the plaintiff testified that the letter from Roderick to the Oregon State Board of Health on November 26, 1973, was not absolutely privileged. The witnesses for the defendants testified that it was absolutely privileged.

ant's advice was not reasonable under the circumstances. We agree. Whether or not the plaintiff would have prevailed on an appeal is a question of law. Whether or not the defendants' advice was reasonable is a question of fact. *Chocktoot v. Smith,* 280 Or 567, 571 P2d 1255 (1977).

It is the plaintiff's position that on an appeal to the Oregon Supreme Court[3] in the Roderick case, the order for a new trial would have been set aside and Roderick could not have successfully cross-appealed from orders overruling the demurrer and denying the motion for a directed verdict.[4] Thus, the plaintiff contends the Oregon Supreme Court would have reinstated his verdict.

The defendants counter by saying that in any event Roderick could have again demurred to the plaintiff's complaint on appeal on the ground that a cause of action was not stated because the letter of November 26, 1973, was absolutely privileged. Thus, the defendants contend that the plaintiff as a net result would

[3] The trial and the aftertrial motions in the Roderick case were in June and July 1975. The appeal would have been directly to the Oregon Supreme Court.

[4] The plaintiff contends the new trial was granted erroneously by the trial court on the grounds of excessive damages through passion and prejudice. *Foley v. Pittenger,* 264 Or 310, 503 P2d 476 (1973); *Van Lom v. Schneiderman,* 187 Or 89, 210 P2d 461 (1949). The motion for a new trial set forth four separate grounds. The order granting the new trial did not set forth a reason.

Relying on *Chaney v. Fields Chevrolet,* 264 Or 21, 503 P2d 1239 (1972); *Ketchum v. State of Oregon,* 2 Or 104 (1864); and *Baker v. City of Milwaukie,* 17 Or App 89, 520 P2d 479 (1974), plaintiff claims that Roderick could not have appealed from the order overruling a general demurrer when any one of the three causes of actions was good. Plaintiff says that there is no question but that the cause of action based on the Plantz telephone conversation involved qualified, and not absolute, privilege.

The plaintiff argues that Roderick could not have successfully appealed from the order denying the motion for a directed verdict because the answer alleged the communications set forth in the complaint were of "mutual concern" to the parties and therefore qualified privilege, not absolute privilege.

Because of the result that we reach in this case we do not consider these questions.

have a judgment against Roderick only on his second cause of action on the Plantz telephone conversation for $100 general damages and $300 punitive damages or a new trial on only the second cause of action.

The defendants are correct that Roderick could have demurred to the plaintiff's complaint on appeal on the ground that it did not state facts sufficient to constitute a cause of action. *Shires v. Cobb,* 271 Or 769, 534 P2d 188 (1975). This ground for a demurrer is not waived by answering over and may be asserted on appeal. *Fulton Ins. v. White Motor Corp.,* 261 Or 206, 493 P2d 138 (1972). However, when the complaint is tested on appeal by demurrer on this ground it will be liberally construed in favor of the plaintiff. *Sherrod v. Holzshuh,* 274 Or 327, 546 P2d 470 (1976).

Roderick's letter to the State Board of Health was attached to and by reference made a part of the amended complaint. The first cause of action was based upon it. Roderick's demurrer on appeal to the first cause of action would have been sustained if the statements in the following letter were absolutely privileged:

> "RODERICK ENTERPRISES, INC.
> "4305 River Road N. Salem, Oregon
> "(503) 588-2700

"November 26, 1973

"Oregon State Board of Health
"Health Division
"Nursing Home Licensing Division
"1920 N. Kilpatrick
"Portland, Oregon

"Gentlemen:

"After much deliberation and consideration, I feel I am forced to write this letter regarding one of my past employees. Mr. Stanley [sic] Stafford, who was the administrator at Linn Care Center through August 8, 1973, borrowed certain funds from our nursing home. Mr. Stafford had a problem with finances. He found himself personally in debt and had a

[787]

problem trying to live on his income. Evidently, to cover the deficiences[sic] or the shortgages[sic] in his bank account, he borrowed money over a period of six to eight months out of our State Welfare Patient Trust Account. This sum of money was approximately $1,400.00. It was proven he did borrow or take about $1,100.00. We reported this incident to our bonding company and have since collected the monies that we proved he did take; therefore, our losses have been covered. I personally do not feel this man deserves an Administrator's License. I don't feel we need this type of individual in our industry, we get enough bad publicity as it is. I understand Mr. Stafford is trying to put together a new nursing home or acquire a nursing home in the Salem area, I don't have any proof of this, but this is my understanding. I hate to see something like this go through for him.

"Please advise me if possible on your decision, or what your recommendations are.

"Sincerely,

"RODERICK ENTERPRISES, INC.

"/s/ R. V. Roderick
"R. V. Roderick
"President"

No cause of action exists when the defamatory statements are absolutely privileged even though the statements are false and uttered with malice. *Moore v. West Lawn Mem'l Park,* 266 Or 244 at 249, 512 P2d 1344 (1973). We think that this case is controlled by *Moore.* The defendant here wrote to the State Board of Funeral Directors saying in effect that the plaintiff should not be granted a license. The letter also contained remarks alleged to be defamatory. The court held the letter to be absolutely privileged and, at 249, said:

"The key case is *Ramstead v. Morgan,* 219 Or 383, 347 P2d 594, 77 ALR2d 481 (1959). There, the defamation was contained in an unsolicited letter sent by the defendant to a grievance committee of the State Bar. No proceeding was in progress and the letter did

not result in any formal proceeding. We held the letter absolutely privileged.

"We stated that the granting of an absolute privilege to defame 'is based upon the ground that "there are certain relations of life in which it is so important that the persons engaged in them should be able to speak freely that the law takes the risk of their abusing the occasion and speaking maliciously as well as untruly, and in order that their duties may be carried on freely and without fear of any action being brought against them, it says: 'We will treat as absolutely privileged any statement made in the performance of these duties.' " ' *Ramstead v. Morgan, supra* (219 Or at 387).

"We further reasoned that the relation of citizens to judicial proceedings is so important that '[t]he absolute immunity attaches to statements made in the course of, or incident to a judicial proceeding.' 219 Or at 388. We held that this includes quasi-judicial proceedings before administrative bodies and '[t]he privilege is made applicable to proceedings before administrative bodies having the power to grant and revoke licenses.' 219 Or at 389."

We find that the statements in the letter of November 26, 1973, from Roderick to the Oregon State Board of Health were absolutely privileged. The Supreme Court of Oregon on appeal would have sustained Roderick's demurrer to the plaintiff's first cause of action and remanded the case for either the entry of a judgment for $100 general damages and $300 punitive damages on only the second cause of action or a new trial on only the second cause of action. It follows that the defendants' advice to the plaintiff to settle the case for $10,000 was not negligent.[5]

Affirmed.

[5] The defendants in their brief in this court have said:

"Roderick might also have successfully attacked and eliminated the portion of the verdict based upon punitive damages leaving plaintiff with a judgment of $2,100.00. See *Wheeler v. Green,* 286 Or 99, 117-19, 593 P2d 777, 789 (1979), holding punitive damages cannot be recovered in a libel action because prohibited by Art I, § 8 of the Oregon Constitution. The Oregon Constitutional argument in *Green* was raised for the first time on appeal."